The Honorable John C. Coughenour

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

| | |
|---|---|
| STATE OF WASHINGTON, et al. | NO. 2:21-cv-00002-JCC |
| Plaintiffs, | PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION |
| v. | NOTE ON MOTION CALENDAR: JANUARY 29, 2021 |
| RUSSELL VOUGHT, et al. | |
| Defendants. | ORAL ARGUMENT REQUESTED |

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

i

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................ 1

II.  RELEVANT FACTS ........................................................................................... 2

    A.  The National Archives at Seattle .............................................................. 2

    B.  The Federal Assets Sale and Transfer Act of 2016 (FASTA) ................... 3

        1.   Properties used in connection with federal conservation, agricultural, or recreational programs are exempt from sale under FASTA ........................ 3

        2.   FASTA's procedural requirements ................................................... 7

    C.  The Government's Decision to Sell the Archives Facility ........................ 8

    D.  The Archives Facility Could Be Sold in Early 2021 ............................... 10

III. ARGUMENT ..................................................................................................... 10

    A.  Legal Standard ....................................................................................... 10

    B.  Plaintiffs Are Likely to Succeed on the Merits ...................................... 11

        1.   The Archives facility is exempt from sale under FASTA ........................ 11

        2.   OMB and GSA violated FASTA's mandatory procedural requirements .... 13

            a.   OMB failed to fulfill its FASTA Section 11 duties ........................ 13

            b.   Any sale of the facility is procedurally deficient and unlawful ....... 16

    C.  Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief ........................ 18

    D.  The Equities and Public Interest Weigh Strongly in Plaintiffs' Favor ................... 23

    E.  A Preliminary Injunction Prohibiting the Sale Is Necessary and Appropriate ........ 24

IV.  CONCLUSION .................................................................................................. 24

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

ii

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

### I.   INTRODUCTION

2

In a rushed effort to sell off federal property, the Trump Administration intends to remove

3

from the Pacific Northwest some of the most vital original records of this region's history and

4

people. This effort violates federal law and would cause irreparable harm—"we are made by

5

history" and cannot afford to lose our past.[1] The Court should issue a preliminary injunction.

6

The National Archives building in Seattle houses unique, irreplaceable, and un-digitized

7

federal records of profound importance to Indian Tribes and their members, individuals of

8

Chinese and Japanese descent, researchers, historians, and the general public—including tribal

9

and treaty records, case files related to the Chinese Exclusion Act of 1882, and records related

10

to Japanese American internment during World War II. Nonetheless, the Administration plans

11

to sell the facility imminently pursuant to the Federal Assets Sale and Transfer Act (FASTA)

12

and to transfer these records to facilities over a thousand miles away. But the Archives facility

13

is exempt from sale under FASTA because it is "used in connection with Federal programs for

14

agricultural, recreational, or conservation purposes, including research in connection with the

15

programs." FASTA § 3(5)(B)(viii). Even if FASTA applied, Defendants failed to comply with

16

its basic procedural requirements, ranging from mandatory deadlines to development of

17

principles to guide decision-making, rendering their actions *ultra vires* and contrary to law.

18

Selling the Archives is not only illegal, it would also be profoundly harmful. As

19

documented in dozens of declarations submitted with this motion, the Archives provide a vital

20

link for Tribes, researchers, and members of the public to access historical documents, many of

21

which have profound impacts today. Scattering these documents across the country will

22

irreparably harm our region and there is no concomitant benefit to the federal government in

23

using a rushed and haphazard process to sell this property. In short, selling the Archives in this

24

manner is unlawful, will cause irreparable harm, and is counter to the equities and public interest.

25

The Court should preliminarily enjoin this unlawful and shortsighted action.

26

[1] Martin Luther King, Jr., *Strength to Love* (1963).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

## II.     RELEVANT FACTS

### A.     The National Archives at Seattle

Seattle's Federal Archives and Records Center is located at 6125 Sand Point Way NE, Seattle, WA 98115 and houses the National Archives at Seattle. Dkt. #1 (Compl.) ¶4. It is currently occupied and operated by the National Archives and Records Administration (NARA), and is owned by the General Services Administration (GSA). Compl. ¶9. The Archives facility houses the permanent, irreplaceable federal records of Washington, Oregon, Alaska, and Idaho that are particularly important to residents of this region, such as census and genealogical records, tribal records, records related to the Chinese Exclusion Act and immigration, and records related to the internment of Japanese Americans during World War II. *See id.* ¶¶77-90.[2] Many of these records are unique, original documents, and the vast majority are un-digitized and not available online. *Id.* ¶¶1-2, 75-76.[3] They are not "dead files" in perpetual storage, but "a vibrant, special collection *library*." King George ¶5.

The Archives facility's tribal and treaty records hold great value for Tribes and tribal members in particular, who use them for a variety of purposes such as applying for federal recognition or restoration, establishing tribal membership, demonstrating and enforcing tribal rights to fishing, tracing their lineage and ancestry, and accessing Native school records. Compl. ¶¶79-83.[4] For many tribal members, the Archives documents are "not just boxes of historical records," but offer a profoundly tangible connection to their history. *See, e.g.*, Hall ¶5; Farrar ¶7. The Archives also contain over 50,000 case files related to the Chinese Exclusion Act of 1882, a critical resource for historical preservation organizations and Chinese Americans seeking information about their ancestors. Compl. ¶¶84-87; *see, e.g.*, So Ltr. In addition, the Archives

---

[2] *See generally* all Declarations in the Appendix filed herewith.

[3] *See also, e.g.*, Abe ¶3; de los Angeles ¶8; Bond ¶9; Booth ¶4; Brigman ¶3; Fisher ¶5; Gentry ¶13; Hall ¶4; Hansen ¶¶3-4; Harmon ¶9; Harrelson ¶9; Haycox ¶6; Farrar ¶¶11-12; Johnson ¶8; Klingle ¶4; Nicola, P. ¶3; Oberg ¶8; Pickernell ¶4; Rushforth ¶¶4-6; Stein, G. ¶5; Sullivan, M. ¶12.

[4] *See also, e.g.*, de los Angeles ¶9; Booth ¶¶4, 5, 8; Fisher ¶7; Gentry ¶¶10, 14-15; Hall ¶¶4-7; Harmon ¶¶8, 14; Harrelson ¶¶4-6, 9; Hill ¶5; Pickernell ¶¶4-6, 9; Saluskin ¶9; Wooten ¶¶3-6.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

facility—which sits on land farmed by the Uyeji family before their forced internment in 1942, and now houses internment-related records—has special significance for the local Japanese American community. Compl. ¶¶88-90; *see, e.g.*, Brigman ¶3.

**B.     The Federal Assets Sale and Transfer Act of 2016 (FASTA)**

FASTA, Pub. L. No. 114-287, 130 Stat. 1463 (2016), as amended, establishes a process for selling federal real property on an expedited basis. It created an independent Public Buildings Reform Board (the PBRB) and a process for the PBRB to identify and recommend real property assets for disposal over a specified period, after which the PBRB will disband. *Id.* §§ 4, 10, 12.

**1.     Properties used in connection with federal conservation, agricultural, or recreational programs are exempt from sale under FASTA**

Certain property types are excluded from the definition of "Federal civilian real property" that is subject to sale under FASTA. FASTA § 3(5). One type of exempt property is: "Properties used in connection with Federal programs for agricultural, recreational, or conservation purposes, including research in connection with the programs." *Id.* § 3(5)(B)(viii). The Archives facility is just such a property, as it is used in connection with a vast number of such programs.

The National Park Service (NPS) "preserves unimpaired the natural and cultural resources and values of the National Park system," working to "extend the benefits of natural and cultural resource conservation and outdoor recreation" nationwide. Fraas Ex. 1. As a recently retired NPS historian explains, Seattle Archives records are "an absolute necessity for research in connection with many federal programs for agricultural, recreational, or conservation purposes," including programs related to resource management and historical use of NPS lands. Norris ¶5. Archives research has been used to develop visitor education materials, exhibits, and trailhead and trail signage for U.S. Forest Service projects at national parks and trails in the Pacific Northwest and Alaska. Booth ¶6; Allen ¶5; Smythe ¶6; Mansfield ¶8; *see also* Compl. ¶56 (use by Wing Luke Museum, a Smithsonian affiliate and NPS Affiliated Area). Researchers have also used Archives records for NPS-funded projects to guide the management of San Juan

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   Island National Park, Nash ¶9; document and conserve historic places important to Latino and

2   African American communities in the Pacific Northwest, Sullivan, M. ¶11; and identify Alaska

3   Native historic sites eligible for selection under the Alaska Native Claims Settlement Act of

4   1971, which transferred land titles to Alaska Native corporations, Smythe ¶4; Stein, G. ¶¶2-3.

5   Through a Japanese American Confinement Sites Grant, NPS also recently funded Archives

6   research used to aid visitor interpretation at several national historic sites. Abe ¶5. Other federal

7   agencies likewise use the Seattle Archives or fund Archives research for ecological conservation

8   programs, including the U.S. Department of Fish and Wildlife, U.S. Army Corps of Engineers

9   (USACE), Bureau of Land Management, and National Oceanic and Atmospheric Administration

10  (NOAA) among others discussed below. House ¶¶11-12; Parham ¶7; Wilson ¶24.

11       Tribes, "this country's first conservationists," King George ¶6, also make extensive use

12  of the Archives in connection with a wide variety of federal conservation, agricultural, and

13  recreational programs. Many such programs are carried out with federal funding provided under

14  the Indian Self-Determination and Education Assistance Act of 1975, as amended (ISDEAA),

15  25 U.S.C. §§ 5301-5423,[5] as well as grants from various federal agencies. *See, e.g.*, Sullivan, J.

16  ¶¶5-9 (Archives research for ecological conservation, climate change impact assessment, and

17  natural resource management programs); Thomas ¶¶2, 5-6 (research for federally funded Tribal

18  Timber, Fish & Wildlife Program and archaeological, cultural and ecological conservation

19  purposes); Stiltner ¶¶4-8; Geyer ¶¶6, 10-16 (research for conservation programs funded by

20  ISDEAA, EPA, USACE, NPS); Strong ¶10 (research for conservation programs funded by

21  NOAA, EPA, BIA); Peterson ¶¶8-12 (large portions of Alaska are federal lands; discussing use

22

23       [5] ISDEAA "authorizes the [Federal] Government and Indian tribes to enter into contracts in which the tribes promise to supply federally funded services . . . that a [Federal] Government agency would otherwise

24  provide." *Cherokee v Leavitt*, 543 U.S. 631 (2005). Tribal officials acting under these contracts are "performing a federal function" administering "federal programs benefitting Indians." *FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230, 1234 (8th Cir. 1995), cited approvingly in *Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian*

25  *Affairs*, 255 F.3d 801, 807-08 (9th Cir. 2001). Tribal Historical Preservation Officers are expressly authorized to undertake "conservation" efforts. 54 U.S.C. §§ 3021019(1), 302702. Tribal officials rely on the Seattle Archives in

26  carrying out these and other federal functions. *See, e.g.*, Wisniewski ¶6; Sullivan, J. ¶6.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

of Archives research in conserving those lands); Simon ¶¶17-19 (research related to Alaska National Interest Lands Conservation Act); Schutt ¶7; Peterson ¶9 (federal allotment land management program); Wisniewski ¶¶6, 8-9 (research for federally funded historic conservation research and environmental cleanup work); Bossley ¶¶14-17, 21; Parham ¶¶7-10; Mansfield ¶¶6-8; Thomas J. ¶6; Stiltner ¶¶4-8; *see also* King George ¶6. The Klamath Tribes also recently used the Archives for research to protect treaty-reserved water rights in the Klamath River Basin in connection with a long-term federal restoration project to store and divert water for irrigation and habitat conservation. Gentry ¶11; *see Baley v. United States*, 942 F.3d 1312, 1316 (Fed. Cir. 2019), *cert. denied*, 141 S. Ct. 133 (2020). In general, tribal governments rely on the Archives for claims under the Native American Graves Protection and Repatriation Act and government-to-government relations, as well as to resolve land and water rights issues. Klingle ¶5; Taylor, J. ¶5; Gentry ¶11. In addition, a U.S. Department of Agriculture Specialty Crop Block Grant is funding a Washington agricultural history project that will require Archives research related to irrigation, soil conservation, transportation, and educational programs. McCaffrey ¶6.

NPS's National Register of Historic Places (the National Register) is another Federal conservation program that routinely involves use of the Archives. The National Register is "part of a national program to coordinate and support public and private efforts to identify, evaluate, and protect America's historic and archaeological resources." Fraas Ex. 2. It is authorized by the National Historic Preservation Act of 1966 (NHPA), which defines "historic preservation" to include "conservation" of historic properties. 54 U.S.C. § 300315(1). Nominating a property for inclusion on the National Register "generally requires extensive use of the National Archives facility" to establish the relevant criteria. Sullivan, M. ¶¶5-11; Brooks ¶¶4-5; Carter ¶4; Geyer ¶¶6-9; McCaffrey ¶7; Smythe ¶5; Tushingham ¶6; Wilson ¶25; Harrelson ¶6 (discussing Grand Ronde Land Tenure Project as a recent example); Bossley ¶¶14-17, 21 (discussing use of Archives for Traditional Cultural Property application). Furthermore, properties listed on the National Register are eligible for the Historic Tax Credit program, which is also a "conservation"

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

program, as defined in the Internal Revenue Code. *See* I.R.C. § 170 (4)(c)(A) ("conservation purpose" includes "the preservation of an historically important land area or a certified historic structure"); Brooks ¶¶6-7. Other similar programs include NPS's Tribal Preservation Program, Historic American Buildings Surveys, Historic American Engineering Records, and Federal Certified Local Government program, which also conserve historical properties based on information obtained from the Archives. Brooks ¶8; McCaffrey ¶7; Wisniewski ¶6.

The Archives facility itself is also directly used for conservation. NARA, which operates the facility, has several "Preservation Programs," including a "Conservation Division" that is generally responsible for document conservation. Compl. ¶126. The Conservation Division's page on NARA's website explains, *inter alia*: "We assess the condition of the records and identify their composition, and we stabilize and treat documents to prepare them for digitization, exhibition, and use by researchers." Fraas Ex. 3. NARA also has a unit known as the "Document Conservation Laboratory" or "Conservation Lab." Compl. ¶126. According to NARA's website, the Conservation Lab "is responsible for conservation activities which contribute to the prolonged usable life of records in their original format." *Id.* Among other activities, the Conservation Lab "repairs and stabilizes textual records (un-bound papers, bound volumes, and cartographic items) and photographic images among the holdings of [NARA] and provides custom housings for these records as needed." Fraas Ex. 4. NARA conducts conservation-related activities as to documents housed at the Seattle Archives facility. House ¶18. In addition, staff at the National Archives at Seattle conduct conservation work themselves. *Id.* ¶¶13, 15.

Defendants do not appear to have considered this FASTA "Federal programs" exemption in connection with their planned sale of the Archives facility. *See infra* at 9.[6] Indeed, they were not even aware of Tribes' interest in the Archives for *any* purpose. *Infra* at 10.

---

[6] The Court may consider extra-record evidence in an APA case where, *inter alia*, the agency has failed to take required actions, *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000), or failed to consider relevant factors, such as facts related to the scope of its statutory authority, *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005), as occurred here.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

### 2.    FASTA's procedural requirements

FASTA Section 11 establishes a multi-step process to ensure the PBRB has the needed decision-making framework and data to recommend properties for sale. The first step is for federal agencies to make initial recommendations. FASTA § 11(a)(2). This must be done "[n]ot later than 120 days after the date of enactment of this Act, and not later than 120 days after the first day of each fiscal year thereafter until termination of the Board[.]" *Id.* § 11(a)(2).

The second, critical step is for the Office of Management and Budget (OMB) to "develop consistent standards and criteria against which the agency recommendations will be reviewed," *id.* § 11(b)(1)(B), and, with GSA, to "jointly develop recommendations to the [PBRB] based on the standards and criteria developed under paragraph (1)." *Id.* § 11(b)(2). "In developing the standards and criteria under paragraph (1)," OMB and GSA "shall incorporate" ten enumerated factors, including, *inter alia*, "[t]he extent to which a civilian real property aligns with the current mission of the Federal agency" and "[t]he extent to which public access to agency services is maintained or enhanced." *Id.* §§ 11(b)(3)(F), (J). In addition, the standards developed by OMB under FASTA Section 11 "shall incorporate and apply clear standard utilization rates to the extent that such standard rates increase efficiency and provide performance data." *Id.* § 11(c).

The third, equally critical step is for OMB to "submit the standards, criteria, and recommendations . . . to the [PBRB] with all supporting information, data, analyses, and documentation." *Id.* § 11(d)(1); *see also* § 11(b)(1)(C). This must be done "[n]ot later than 60 days after the deadline for submission of agency recommendations under subsection (a)[.]" *Id.* § 11(b)(1). "The standards, criteria, and recommendations developed pursuant to subsection (b) shall be published in the Federal Register and transmitted to the [congressional] committees listed in section 5(c) and to the Comptroller General of the United States." *Id.* § 11(d)(2).

Section 12 of FASTA sets forth the PBRB's duties, which include recommending "Federal civilian real properties" for sale or disposal. The PBRB must make its recommendations within 180 days after a quorum of Board members is appointed. *Id.* § 12(b)(1). In doing so, the

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

PBRB "shall consider the factors listed in section 11(b)(3)." *Id.* § 12(b)(1)(B). The PBRB's recommendations are transmitted to OMB, *id.* § 12(b)(1)(B), and under Section 13, OMB then reviews the PBRB's recommendations and approves or disapproves them. *Id.* §§ 13(a)–(b). FASTA provides that "[a]ctions taken pursuant to sections 12 and 13" and "[a]ctions of the [PBRB]" are exempt from judicial review. FASTA § 18. All other acts or omissions under FASTA, including the actions required under Section 11, are reviewable. *See id.*

As detailed below, in January 2020, OMB approved the PBRB's recommendation to sell the Archives facility, without having completed Section 11's procedural requirements.

## C.      The Government's Decision to Sell the Archives Facility

Despite FASTA's passage in 2016 and the strict deadlines it establishes to facilitate expedited property sales, a quorum of five PBRB members was not sworn in until May 2019. Compl. ¶130. This gave the PBRB until November 2019 to make its recommendations. *See* FASTA § 12(b)(1). The PBRB described this statutory timeline as "formidable," particularly as "PBRB members did not have Government ID's for over 2 months after being sworn in, and the PBRB had no staff for the first 4 months, leaving substantial work to be accomplished in just 8 weeks." Fraas Ex. 5 at 12. OMB's failure to comply with its mandatory responsibilities under FASTA Section 11 compounded the problems. As the PBRB itself acknowledged in making its recommendations to OMB: "Unfortunately, the PBRB did not benefit from the Section 11 FASTA directive that OMB, in consultation with GSA, develop standards and criteria to use in evaluating agency submissions and making recommendations to the PBRB." *Id.* at 10. Indeed, "[t]o the best of PBRB's knowledge, the standards and criteria [required by FASTA Section 11] were never developed." *Id.* This, in turn, hampered the PBRB's efforts under FASTA: as the PBRB candidly acknowledged in its final report, "defined standards, criteria, and recommendations would have significantly reduced the PBRB's challenges." *Id.* at 12.

On December 27, 2019, the PBRB submitted to OMB a list of twelve properties for proposed sale, one of which was the National Archives at Seattle, along with a "High Value

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Assets Report" (the PBRB Report) that included the purported bases for its proposals. Compl. ¶135; Fraas Ex. 5. The PBRB Report acknowledged, but did not analyze, the FASTA exemption for "[p]roperties used in connection with Federal programs for agricultural, recreational, or conservation purposes[.]" Fraas Ex. 5 at 7. According to the PBRB Report, federal agencies submitted their recommended properties for sale or disposal to OMB and GSA on the following dates: April 14, 2017 (FY17); November 30, 2017 (FY18); December 7, 2018 (FY19); and November 8, 2019 (FY20). *Id.* FASTA required OMB and GSA to develop standards, criteria, and recommendations and transmit them to the PBRB within 60 days after those agency submission deadlines. FASTA § 11(b)(1). However, as noted above, the standards, criteria, and recommendations were never developed or transmitted to the PBRB. *See id.* at 10.

OMB's failure to undertake its FASTA Section 11 responsibilities tainted the entire property selection process. Without OMB's "information, data, analyses, and documentation," FASTA § 11(d)(1), PBRB had to rely on other information. But, as the PBRB acknowledged, it "faced . . . challenges in gathering the data needed to support decision making for complex real estate transactions." *Id.* at 12. Indeed, the PBRB identified "extraordinary issues with data gaps and data integrity" in the data contained in the Federal Real Property Profile,[7] which it "relied heavily on" for its decision-making. *Id.* at 13; *see also* Fraas Ex. 6 (discussing data errors such as showing a federal building located "in the middle of an ocean").

Moreover, in recommending and selecting the Archives facility for sale, Defendants failed to notify and/or consult with tribal leaders or other stakeholders in the Pacific Northwest regarding the Archives facility's potential sale. Compl. ¶¶145-152.[8] No public hearings were held in Washington, Idaho, Oregon, or Alaska—and in hearings held elsewhere, the potential

---

[7] The Federal Real Property Profile is an inventory of information about the nature, use and extent of the Federal government's real property assets. *See* https://tinyurl.com/yxvwjyju (last visited Jan. 7, 2021).

[8] *See, e.g.*, de los Angeles ¶5; Bossley ¶19; Gentry ¶14; King George ¶¶13-15; Gomez ¶7; Harrelson ¶¶7-8; James ¶¶7-8; Johnson ¶¶4-12; Krise ¶6; Matheson ¶8; Pickernell ¶¶7-8; Pierre ¶7; Saluskin ¶7; Schutt ¶¶10-11; Simon ¶20; Stiltner ¶¶8-9; Strong ¶12; Sullivan, J. ¶¶10-17; Taylor, A. ¶¶8-9; Thomas ¶¶7-8; Wooten ¶5; Abe ¶6; Booth ¶7; Carter ¶6; Fisher ¶¶9-10; Klingle ¶¶6-7; Lee ¶15; Norris ¶6; Rushforth ¶10; Taylor, J. ¶6; Carter ¶6.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

sale of the Seattle Archives facility was never mentioned. Compl. ¶145. In addition, in an October 2020 PBRB meeting, a Board member acknowledged that Tribes were not consulted in selecting properties, stating that "[w]ith respect to tribal entities, I guess, that hasn't been brought to our attention before that there was an interest there," while acknowledging "if they are a stakeholder in a property, certainly we would want to consult with them." Fraas Ex. 7. After the sale decision became public, there was a significant and immediate regional outcry once the public learned, largely after the fact, of the decision to sell the Archives facility. *Id.* Exs. 8-10. Many tribal representatives and others sent letters seeking reconsideration, to no avail.[9]

On January 24, 2020, OMB summarily approved the sale of the Archives facility and the other properties. Compl. ¶136; Fraas Ex. 11. Once the facility is sold, Defendants plan to ship the Archives' records to other NARA facilities in Southern California and Missouri. Compl. ¶10.

**D.    The Archives Facility Could Be Sold in Early 2021**

On November 30, 2020, the State unexpectedly learned from a chance review of the PBRB's website that the agency intends to bundle the Seattle Archives facility with several other federal properties and sell them as "a single portfolio," and that "[t]he Government intends to bring the properties to market by early 2021." Fraas ¶15, Ex. 12. Despite the demonstrated public interest in the Archives facility and the State's pending Freedom of Information Act lawsuits,[10] Defendants did not alert Plaintiffs of this decision nor seek their input. Fraas ¶15.

## III.    ARGUMENT

**A.    Legal Standard**

A party seeking a preliminary injunction must show that: (1) it is likely to succeed on the merits; (2) it will likely suffer irreparable harm in the absence of an injunction; (3) the balance of equities tips in its favor, and (4) an injunction is in the public interest. *See* Fed. R. Civ. P. 65(b)(1); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

---

[9] *See* Stiltner Exs. B-C; Sullivan, J. Ex. G; Bond Ex. 1; Turner Ex. 1.

[10] On February 3, 2020, the State of Washington submitted FOIA requests to the PBRB, OMB, GSA, and NARA regarding the proposed sale of the Archives Facility, and later sued to obtain the documents. *See* Dkt. #5.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

10

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**B.**     **Plaintiffs Are Likely to Succeed on the Merits**

Plaintiffs are likely to succeed on the merits of their claims. Count I alleges that the Archives facility is exempt from sale under FASTA because it is a property "used in connection with Federal programs for agricultural, recreational, or conservation purposes, including research in connection with the programs." FASTA § 3(5)(B)(viii); Compl. ¶¶153-162. Counts II and III allege that OMB and GSA failed to comply with FASTA Section 11's mandatory procedural requirements, rendering their actions to facilitate and effectuate the sale procedurally deficient and contrary to law. *Id.* ¶¶163-180. (Plaintiffs are not moving on Count IV.)

**1.**     **The Archives facility is exempt from sale under FASTA**

Under the statute's plain language, the Archives facility falls within FASTA's "Federal programs" exemption for multiple independent reasons. Among other things, the Archives is regularly used in creating signage, exhibits, and visitor education materials at national parks and other federal conservation and recreational areas; Tribes use the Archives extensively to implement conservation programs for which they have been delegated responsibility under ISDEAA and/or for research in connection with other federally funded conservation, agricultural, or recreational programs; it is routinely used for a variety of federal historical conservation programs, including the National Register of Historic Places, National Historic Landmark Program, and Historic Tax Credit program, among others; and the Archives facility itself houses documents subject to NARA's own conservation programs. *Supra* Section II.B.1.

Count I calls for a straightforward, plain-language application of the "Federal programs" exemption to uses of the Archives facility in connection with the programs discussed herein. " 'Canons of statutory construction help give meaning to a statute's words. We begin with the language of the statute.' " *City of Los Angeles v. Barr*, 941 F.3d 931, 940 (9th Cir. 2019) (quoting *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.*, 353 F.3d 1051, 1060 (9th Cir. 2003)). Notably, FASTA does not define any of the terms used in the exemption, including "conservation," "agricultural," or "recreational." *See generally* FASTA § 3. As such, these terms are to be given

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

" 'their ordinary, contemporary, common meaning,' " and the Court " 'may consult dictionary definitions.' " *City of Los Angeles*, 941 F.3d at 940 (citation omitted).

Webster's defines "conservation" as, *inter alia*, "a careful preservation and protection of something"; "the things that are done to keep works of art or things of historical importance in good condition"; "planned management of a natural resource to prevent exploitation, destruction, or neglect."[11] The well-established use of the Archives facility for research in connection with the federal ecological and historical conservation programs discussed above exempts that property from sale under FASTA. *Supra* at 3-6. Many of these programs also have a "recreational" component, in that they offer the public "a means of refreshment or diversion"[12] such as hiking, camping, and other outdoor activities, or learning about historically significant sites. Federal programs pertaining to natural resources, water, and land use rights almost inevitably have a conservation, recreational, and/or agricultural purpose, and Tribes often use the Archives for research related to such programs. *Supra* at 3-6. Use of the Archives facility in connection with conservation of "things of historical importance," including the National Register of Historic Places and other NPS historical conservation programs, also exempts the property from sale under FASTA. "Conservation" also applies directly to the work of NARA's Conservation Division and Conservation Lab: NARA "repairs and stabilizes textual records . . . and photographic images" to "prolong[] the "usable life" of the records—including records housed at the Seattle Archives facility itself. *Supra* at 6. Use of the Archives facility in connection with any one of these programs exempts the property from sale under FASTA.

Moreover, the FASTA exemption's phrase "in connection with" should be construed broadly. The Supreme Court "has often recognized that 'in connection with' can bear a 'broad interpretation.' " *Mont v. United States*, 139 S. Ct. 1826, 1832 (2019) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006)); *see also In re Plant Insulation*

---

[11] *Conservation*, Merriam-Webster.com, https://tinyurl.com/yy536v3w (last visited Jan. 5, 2021).
[12] *Recreation*, Merriam-Webster.com, https://tinyurl.com/yy4p8jzp (last visited Jan. 5, 2021).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

12

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    *Co.*, 734 F.3d 900, 910 (9th Cir. 2013) ("in connection with" is synonymous with "relating to");

2    *Cal. Tow Truck Ass'n v. City & County of San Francisco*, 807 F.3d 1008, 1022 (9th Cir. 2015)

3    ("relating to" has a "broad" meaning). As the Supreme Court explained, "[i]f Congress intended

4    a narrower interpretation [of the statute], it could easily have used narrower language," and

5    courts "cannot override Congress' choice to employ the more capacious phrase 'in connection

6    with.' " *Mont*, 139 S. Ct. at 1832–33. Applying these principles of statutory construction,

7    FASTA's exemption for properties used "in connection with" certain Federal programs, or

8    research "in connection with" such programs, should be construed broadly and plainly exempts

9    the Archives facility from FASTA sale based on the uses discussed herein. Defendants lack any

10   discretion to sell under FASTA a property that is exempt from that statute under its plain terms.

11   *See King v. Burwell*, 576 U.S. 473, 486 (2015) (Court must enforce statute's plain terms).[13]

12        In sum, Congress chose to broadly exempt properties used "in connection with" federal

13   conservation, agricultural, or recreational programs, including for related research, from

14   expedited sale under FASTA. This does not mean the federal government lacks the power to sell

15   its own property in general, but it does mean that Defendants' actions to facilitate and effectuate

16   the sale are not within their authority under FASTA. Plaintiffs are likely to succeed on Count I.

17        **2.    OMB and GSA violated FASTA's mandatory procedural requirements**

18        Even setting the exemption aside, the impending sale is also unlawful because OMB and

19   GSA failed to fulfill the statute's basic, nondiscretionary, procedural requirements. The Court

20   need not consider the wisdom of the agencies' decisions, because their procedural failures render

21   the entire process void and the forthcoming sale unlawful.

22        **a.    OMB failed to fulfill its FASTA Section 11 duties**

23        Under Section 706(1) of the Administrative Procedure Act (APA), courts "shall compel

24   agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "A court can

---

25        [13] Even if the "Federal programs" exemption were somehow ambiguous, there is no agency interpretation
26   to which deference is owed. Any *post hoc* interpretation or rationale offered in litigation is not a proper subject of
     judicial review. *See Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1909 (2020).

1   compel agency action under this section only if there is 'a specific, unequivocal command'

2   placed on the agency to take a 'discrete agency action,' and the agency has failed to take that

3   action." *Vietnam Veterans of Am. v. C.I.A.*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton*

4   *v. S. Utah Wilderness All.*, 542 U.S. 55, 63-64 (2004)). The required agency action must be "so

5   clearly set forth that it could traditionally have been enforced through a writ of mandamus." *Id.*

6       Here, Section 11(b)–(d) of FASTA specifically and unequivocally requires OMB and

7   GSA to take a number of discrete, nondiscretionary actions. Section 11 repeatedly uses

8   mandatory language in setting forth these duties. *See Nat'l Ass'n of Home Builders v. Def. of*

9   *Wildlife*, 551 U.S. 644, 661 (2007) (Congress's "use of a mandatory 'shall' " imposes

10  "discretionless obligations") (internal citation omitted). Specifically, Section 11 requires that:

11  • The Director of OMB "shall," within a specified 60-day period, in consultation with the

12      GSA Administrator, "develop consistent standards and criteria against which [property

13      sale recommendations] will be reviewed," § 11(b)(1);

14  • The Director of OMB and the GSA Administrator "shall jointly develop

15      recommendations to the [PBRB] based on [OMB's] standards and criteria," § 11(b)(2);

16  • The Director of OMB "shall," within the same specified 60-day period, and in

17      consultation with the GSA Administrator, "submit to the [PBRB] the recommendations

18      developed," § 11(b)(1), (2); OMB "shall submit the standards, criteria, and

19      recommendations . . . to the [PBRB] with all supporting information, data, analyses, and

20      documentation," § 11(d)(1); and

21  • The standards, criteria, and recommendations developed by the Director of OMB "shall

22      be published in the Federal Register and transmitted to the [congressional] committees

23      listed in section 5(c) and to the Comptroller of the United States." § 11(d)(2).

24      OMB failed to take even *one* of these mandatory procedural steps. As the PBRB put it:

25  "To the best of PBRB's knowledge, the standards and criteria were never developed." Fraas

26  Ex. 5 at 10. Consequently, OMB never provided the nonexistent standards, criteria, and

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

recommendations to the PBRB, never published them in the Federal Register, and never transmitted them to the specified congressional committees or the Comptroller General.

OMB and GSA's failure to fulfill their most basic duties under FASTA are "egregious enough to warrant mandamus."[14] *Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984) (*TRAC*); *see Agua Caliente Tribe of Cupeno Indians of Pala Reservation v. Sweeney*, 932 F.3d 1207, 1216 n.7 (9th Cir. 2019) (the *TRAC* factors apply to a request for mandamus under the APA). While the standard is "hardly ironclad," courts addressing claims of unlawfully withheld or unreasonably delayed agency action consider the following factors: (1) agency decision-making timelines must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed, that statutory scheme may supply the content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on other agency activities; (5) the court should consider the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that the agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80.

Here, the *TRAC* factors demonstrate that OMB and the GSA's failures warrant relief under APA Section 706(1). <u>First</u>, as to *TRAC* factors 1 and 2, Congress provided a definite "timetable" for the agencies to act: the standards, criteria, and recommendations must be transmitted to the PBRB within 60 days of the agency-recommendation deadline. FASTA § 11(b)(1). This timetable makes sense, because FASTA is designed to "expedite[]" federal property sales, § 2(8), and contemplates that the PBRB will have the benefit of OMB's standards, criteria, and recommendations in identifying properties for sale, which it must quickly do within 180 days after a quorum of Board members is appointed, § 12(b)(1). *See* § 12(b)(3)

---

[14] As discussed in Section III.E, *infra*, at this stage the Court need only preliminarily enjoin the sale of the Archives Facility to preserve the status quo pending a final judgment. A writ of mandamus need not issue now.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

("In identifying properties pursuant to paragraph (1), the [PBRB] shall consider the factors" incorporated into OMB's standards and criteria.). <u>Second</u>, as to *TRAC* factors 3 and 5, the agencies' failure to fulfill their duties caused the PBRB to recommend selling the Archives facility without the benefit of the Congressionally-mandated standards, criteria, recommendations, and "supporting information, data, analyses, and documentation." *See* Sections II.A, II.B.1, III.C. The resulting harms are not purely "economic," but implicate profound human interests such as tribal membership and treaty rights, cultural heritage, and regional history. *See id.* <u>Third</u>, as to *TRAC* factor 4, requiring Defendants to fulfill FASTA's mandatory procedural requirements before proceeding with the sale of the Archives is not unduly prejudicial. The agencies lack authority to move forward with the sale absent compliance with FASTA's mandatory procedures (and also because the property is exempt from FASTA sale), and will not be harmed if the sale is halted absent compliance with FASTA's requirements.

### b.     Any sale of the facility is procedurally deficient and unlawful

Independent of the substance of an agency's decision, federal courts must conduct an "exacting" review of agency action to "ensure[] that statutorily prescribed procedures have been followed." *Kern Cty. Farm Bureau v. Allen*, 450 F.3d 1072, 1076 (9th Cir. 2006); *see also, e.g.*, *Nat. Resources Def. Council, Inc. v. Sec. & Exch. Comm'n*, 606 F.2d 1031, 1048 (D.C. Cir. 1979). Courts "shall hold unlawful and set aside agency action" that is "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), "in excess of statutory . . . authority," *id.* § 706(2)(C), or "otherwise not in accordance with law," *id.* § 706(2)(A).

As discussed above, OMB and GSA failed to follow FASTA's basic procedural requirements, skipping *all* of Section 11(b)-(d)'s mandatory steps. As such, Plaintiffs are likely to succeed on the merits of their claim that Defendants' actions under FASTA are procedurally deficient, *ultra vires*, and contrary to law. Defendants are simply not authorized to sell the Archives facility under FASTA absent compliance with the statute's procedural prerequisites. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 349 F.3d 1157 (9th Cir. 2003) (U.S.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Forest Service failed to comply with procedures required by National Environmental Policy Act's (NEPA) procedural requirements); *Campanale & Sons, Inc. v. Evans*, 311 F.3d 109 (1st Cir. 2002) (Secretary of Commerce failed to comply with Atlantic Coastal Fisheries Cooperative Management Act's "explicit procedural requirement to consult with the appropriate councils before implementing" fishing regulations); *N.Y. Pub. Interest Research Grp., Inc. v. Johnson*, 427 F.3d 172, 182 (2d Cir. 2005) (EPA failed to comply with Clean Air Act's requirement that operating permits for non-compliant air pollution sources must include a compliance schedule).

Notably, whereas Congress exempted certain actions and statutory sections under FASTA from judicial review, actions (or lack thereof) under Section 11 are not among them. *See* FASTA § 18. Where, as here, a statute's bar on judicial review is "demonstratively narrow in scope," other agency action under the statute "remains subject to judicial review." *Hyatt v. Office of Mgmt. & Budget*, 908 F.3d 1165, 1171-72 (9th Cir. 2018) (reviewing OMB decision that was "outside the narrow scope of the [statute's] judicial review bar"); *see generally Regents*, 140 S. Ct. at 1905 (APA establishes a "basic presumption of judicial review"). The Court can, and must, review OMB and GSA's failure to comply with Section 11. *See* 5 U.S.C. § 706.

Moreover, it cannot be said that OMB and GSA's procedural failures were "harmless." *See* 5 U.S.C § 706 ("due account shall be taken of the rule of prejudicial error" in APA review). The Ninth Circuit has stressed that courts must exercise "great caution" in applying the harmless error rule: a procedural failure is "harmless only where the agency's mistake clearly had no bearing on the procedure used or the substance of the decision reached." *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1090 (9th Cir. 2011). "The reason is apparent: Harmless error is more readily abused [in the administrative context] than in the civil or criminal context." *Id.* To avoid "gutting" Congress's procedural safeguards, "harmless error analysis in administrative rulemaking must therefore focus on the process as well as the result." *Id.*; *see also, e.g.*, *Oglala Sioux Tribe v. U.S. Nuclear Regulatory Comm'n*, 896 F.3d 520, 534 (D.C. Cir. 2018) (rejecting harmless error defense to claim that agency violated procedural requirements).

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Here, OMB and GSA's failure to comply with Section 11's procedural requirements is inherently harmful. The publication and transmittal requirements (FASTA § 11(d)(2)) ensure transparency in the standards for evaluating properties recommended for expedited sale, while the requirement to provide "standards, criteria, and recommendations" and the underlying "information, data, analyses, and documentation" (FASTA § 11(d)(1)) is meant to guide the PBRB and provide it with relevant factual information on which to base its recommendations. *See id.* § 12(b)(3) ("In identifying properties pursuant to paragraph (1), the [PBRB] shall consider the factors" incorporated into OMB's standards and criteria.); H.R. Rep. No. 114-578, pt. 1, at 13 (2016) (OMB's provision of property data to the PBRB under Section 11 is "necessary" because "this data is critical to ensuring proper recommendations are developed"). Indeed, similar to NEPA, Section 11 "imposes only procedural requirements," which "ensur[e] that the agency, in reaching its decision, will have available, and will carefully consider, detailed information" that bears on its decision-making. *Winter*, 555 U.S. at 23. It also ensures that OMB has an informed, factual basis on which to "conduct a review" of the PBRB's recommendation. *See* FASTA § 13(a). OMB and GSA's violations of Section 11 cannot be "forgiven merely because they are procedural": the procedures are the point. *Oglala Sioux Tribe*, 896 F.3d at 534.

## C.     Plaintiffs Will Suffer Irreparable Harm Absent Injunctive Relief

Irreparable harm is harm "for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). The harm analysis "focuses on irreparability, irrespective of the magnitude of the injury." *California v. Azar*, 911 F.3d 558, 581 (9th Cir. 2018) (internal quotation marks omitted). The testimony of numerous tribal leaders, local organizations, historians, university administrators, and professors, among others, establishes that the sale and closure of the Archives facility under FASTA and the subsequent removal of NARA's archival records from the Pacific Northwest is likely to cause irreparable harm to Plaintiffs and the regional public at large: it will deprive tribal communities of critical, non-digitized records essential for establishing tribal membership,

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

enforcing land and water use rights, cultural preservation, and documenting tribal history, among other purposes; threatens the organizational missions of historical preservation and community groups and their members; and harms the proprietary interests of Washington and Oregon's public universities, which rely upon the Archives for recruitment and scholarship, as well as state agencies that regularly rely on the Archives to carry out their functions.[15] At a minimum, these documents will be inaccessible for an unknown time period during transit and processing, and could be separated or even irreparably damaged during the move.[16] These harms are particularly acute because the PBRB intends to bring the Archives facility to market "by early 2021," as part of a "single portfolio" with all 12 properties. Fraas Ex. 12. Given the difficulty (if not impossibility) of unwinding such a complex transaction, and the significant harm that would occur if the Archives facility is sold, a preliminary injunction is necessary to maintain the status quo to ensure the facility is not sold before the claims in this matter are resolved.

<u>Harm to Tribal Plaintiffs</u>. As set forth in the numerous declarations submitted herewith, tribal governments and communities will be irreparably harmed if the Seattle Archives facility is sold because tribes and their members are uniquely dependent on its records for core tribal functions and cultural preservation. *See, e.g.*, Fisher ¶8 (use of Archives to vindicate tribal land rights); Gomez ¶¶4, 8 (use to protect treaty hunting and fishing rights, implement historic preservation efforts, and investigate eligibility for tribal membership); Geyer ¶¶5-18 (use for treaty rights and conservation efforts); Hansen ¶¶3-4, 7 (use in seeking federal recognition); Harrelson ¶¶4-6, 9 (use for self-determination and community-based research and for review of federal undertakings under NHPA and NEPA); Krise ¶¶5, 7 (use to protect treaty hunting,

---

[15] Washington and Oregon have standing to vindicate their proprietary interests in the academic and educational missions of state universities and in the fulfillment of state agency functions. *See Alfred L. Snapp & Son, Inc. v. Puerto Rico, ex rel., Barez*, 458 U.S. 592, 601 (1982) (like any similarly situated proprietor, states have standing to pursue their proprietary interests); *City of Sausalito v. O'Neill*, 386 F.3d 1186, 1197 (9th Cir. 2004) (government entity's proprietary interests "are not confined to protection of its real and personal property" and "are as varied as [its] responsibilities, powers, and assets"); *see infra* at 21-22.

[16] *See, e.g.*, Bossley ¶22; Fisher ¶8; Gentry ¶¶13-14; King George ¶16; Harrelson ¶9; House ¶14; Saluskin ¶¶6, 9; Taylor, A. ¶5.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

gathering, fishing, water, and land ownership rights); Pickernell ¶¶4-6, 9 (use to protect land and fishing rights, defend tribal sovereignty, and conduct cultural anthropology work); Reynon ¶¶4-5, 9 (use for tribal history, NHPA compliance, and research on archaeological and culturally significant sites); Saluskin ¶5 (use to assert and defend tribal sovereignty and treaty rights); Schutt ¶¶6-7 (use to establish tribal membership and protect subsistence rights and conservation interests; harm compounded by prior loss of records when NARA Anchorage facility closed).[17]

Travel outside of the Pacific Northwest to access the archival records needed for these foundational purposes is simply not feasible for many Tribes and their members. *See, e.g.*, Gentry ¶14 ("It is already difficult for our members and researchers to travel from our homelands in Southern Oregon, and moving the records to Southern California or Kansas City would effectively take away our ability to study our customs, languages, and traditions."); Gomez ¶¶6, 8 ("[T]he Tribe lacks the financial resources to access these records on a necessary basis if they are moved out of the Pacific Northwest"); Harrelson ¶9 ("A move would increase travel costs for gaining access to materials in person and in some cases prevent access due to lack of funds to access the materials."); James ¶9 (discussing "potentially insurmountable accessibility issues"); Krise ¶7 (Archives move would require tribe to incur "significant cost" to protect legal interests and would "cause cultural harm to the Tribe and individual members by dramatically limiting access to cultural and historical research resources").[18] Notably, financial harm is irreparable where sovereign immunity prevents recovery from the federal government. *See Azar*, 911 F.3d at 581; *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015).

---

[17] *See, e.g.*, Forsman Statement (tribal history and land claims research); Reich ¶¶ 6-8 (tribal history); Simon ¶¶9-19 (essential for Alaska Native allotment applicants; resolving land disputes; subsistence hunting and fishing rights); Stiltner ¶¶9-11 (use to learn about massive transfer of tribal lands to non-Indians); Strong ¶¶6-11 (use to maintain tribal enrollment roll; secure and preserve territory and treaty rights to hunt, gather, and fish; maintain cultural knowledge; and fulfill obligations under ISDEAA and federal grants); Taylor, A. ¶10 (use to access ancestral Indian names, which helps continue the practice of cultural naming ceremonies); *see also, e.g.*, de los Angeles ¶9; Foster ¶4; King George ¶16; Kentta ¶¶5-7; Stiltner ¶¶4-8; Thomas ¶6; Trebon ¶¶ 4-6.

[18] *See also, e.g.*, Matheson ¶¶7, 9 (inability of elderly tribal members "to journey outside of the northwest" due to financial and health restrictions); Kentta ¶8 (limited tribal resources make travel an extraordinary financial hardship); King George ¶16; Simon ¶13; Wooten ¶6; Trebon ¶11; *see also* Stein, J. ¶10.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

Harm to Plaintiff States. Washington and Oregon also risk irreparable harm if the Seattle facility is closed and archival records are removed from the Pacific Northwest. Irreparable harm to state agencies' organizational missions satisfies the *Winter* test and establishes standing. *See E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1265-66, 1280 (9th Cir. 2020); *League of Women Voters of U.S. v. Newby*, 838 F.3d 1, 8 (D.C. Cir. 2016); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013). The Washington State Department of Natural Resources and Department of Archaeology and Historic Preservation use the Seattle Archives to carry out their functions, which will be impeded if those records are moved over a thousand miles away. *See* Bower ¶¶2-13 (access to Seattle Archives is necessary for land use, environmental cleanup, conservation, and other State purposes); Brooks ¶¶2-9 (reliance on Archives in reviewing nominations to the National Register of Historic Places, among other State functions).

State universities and their museums will also suffer harm if the Archives records are moved out of reach, including harm to their programs and educational missions, loss of goodwill, and compromised recruiting. *See Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 520 (9th Cir. 1984) (actionable harms include "impairment of [the university's] ongoing recruitment programs [and] the dissipation of alumni and community goodwill and support garnered over the years"); *see also Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts and goodwill, qualify as irreparable harm."). Such harms will occur here. *See, e.g.*, Wilson ¶¶9, 11, 13, 17-21, 27 (lost access to Archives will hamper UW's research and scholarship activity, impact recruitment, and harm UW's mission); Nash ¶¶2-10; Kucher ¶¶2, 6-10; Gregory Ltr.; Bond ¶¶8-12, 14, 17 (loss of access to Archives will harm WSU students and faculty who rely on archival records for scholarship and impact university's work on tribal record digitization project); Reid ¶¶4-9 (describing "dependence on the unique archival records" for academic research, undergraduate education, and graduate programs, including loss of diversity); Rushforth ¶¶4-5, 7-8, 10-11 (records at Archives critical to the work of many scholars

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

in U of O's History Department, including faculty, graduates and undergraduates; one third of history graduate students engaged in research that relies on materials housed at the NARA Seattle facility); Deitering ¶¶3-4, 6 (describing importance of Archives records for OSU faculty and student research, particularly given OSU's status as a "land grant institution" and its researchers' work with government agencies that regulate and protect natural resources and federal lands); Stein, J. ¶¶6-7 (access to Archives critical to Burke Museum's research).

Harm to Other Plaintiff Organizations, Their Members, and the Public. Plaintiff historical societies, museums, and community organizations also have standing and will suffer irreparable harm to their missions if the Archives records are moved out of the Pacific Northwest. *See E. Bay Sanctuary*, 950 F.3d at 1265; *Newby*, 838 F.3d at 8. For example, members of the American Historical Association, the world's largest professional historian organization, regularly use the facility for their historical work and attest that archival records "are the lifeblood of [the] profession." Compl. ¶48; *see, e.g.*, Booth ¶¶3-5, 8 (Archives facility provides the "intimate and personal stories in their records" historians need to tell useful stories that speak "to the broad experience of humanity"; describing finding Archives letters "written by my great, great grandfather asking the superintendent at the Chemawa Indian School to send my great grandma home for the summer" and "postcards sent to beloved teachers at Chemawa from the trenches of World War I" that led to an article "about the Native students who fought in World War I").[19] Members of community organizations such as the Chinese American Citizens Alliance and OCA – Asian Pacific Advocates, who rely on the Archives to learn about their own histories and teach about the tragic errors of the past, will also be irreparably harmed.[20] *See, e.g.*, Lee ¶¶4-14 (records' relocation would "frustrate the mission of C.A.C.A. Seattle," including "educat[ing] the Pacific Northwest community about the [Chinese Exclusion] Act and its impact on the region

---

[19] *See also, e.g.*, Fisher ¶¶11-12; Harmon ¶¶5-14; Klingle ¶¶3-4, 8; Ostendorf ¶¶2-6; Schlimgen ¶¶ 3-6; Taylor, J. ¶¶2-7; Wadewitz ¶¶ 3-5; *see also* McCaffrey ¶¶4-9 (HistoryLink); Compl. ¶¶48-49, 51-53, 55-56.

[20] *See also, e.g.*, So Ltr.; Brigman ¶¶3-6; Carter ¶¶4-7; Farrar ¶¶2-8; House ¶11; Nicola, P. ¶¶3-4, 6; Nimura ¶¶2-5; Compl. ¶¶50, 54.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

as a whole" and "efforts to add the Chinese Exclusion Act studies to the Washington K-12 curriculum"); So Ltr. It also will impede historic conservation in the region by "delay[ing] or prevent[ing] the research and documentation needed to identify and protect historic places in the Pacific Northwest and the important stories that go with them." Sullivan, M. ¶13. Many historians and community members expound not only on the importance of access to original documents, but also on the benefits of being able to visit the Archives in person, browse its records, and benefit from the knowledge of its local staff.[21] All this will be lost if the sale moves forward and the Pacific Northwest's archival records are shipped far away.[22]

Procedural Harm. Finally, Defendants' procedural failings alone, *supra* Section III.B.2, constitute irreparable harm. *See Azar*, 911 F.3d at 581 (9th Cir. 2018) (affirming finding of "irreparable procedural harm" and "reaffirming that the harm flowing from a procedural violation can be irreparable"); *Save Strawberry Canyon v. Dep't of Energy*, 613 F. Supp. 2d 1177, 1189–90 (N.D. Cal. 2009) (irreparable harm satisfied by claimed procedural violation).

## D.     The Equities and Public Interest Weigh Strongly in Plaintiffs' Favor

The equities and the public interest strongly favor injunctive relief. Because the government is a party, these inquiries merge. *Drake's Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014). For all the reasons above, there is a strong public interest in preventing the unlawful sale to ensure Archives records are not removed from the Pacific Northwest. Moreover, it is in the public interest to " 'curtail unlawful executive action.' " *Hawai'i v. Trump*, 859 F.3d 741, 784 (9th Cir. 2017) (citation omitted), *vacated on other grounds by Trump v. Hawai'i*, 138 S. Ct. 377; *see Planned Parenthood of Great N.W. & Hawaiian Islands, Inc. v. Azar*, 352 F. Supp. 3d 1057, 1066 (W.D. Wash. 2018) ("The Ninth Circuit has recognized that 'the public interest favors applying federal law correctly.' " (citation omitted)). Put another way, "[t]here is

---

[21] *See, e.g.*, Bond ¶¶9, 16; Coen ¶¶3-4; Fisher ¶¶4-6, 12; Hall ¶4; House ¶¶ 3-6, 9; Klingle ¶8; Nicola, R. ¶3; Nimura ¶3; Oberg ¶8; Reich ¶¶6-8; Schutt ¶5; Smythe ¶3; Sullivan, M. ¶12; Taylor, J. ¶5, 7; Turner ¶4; Wilson ¶26; Wisniewski ¶11.

[22] *See, e.g.*, Oberg ¶8; Nicola, P. ¶6; Thrush ¶5; Stein, J. ¶11; Taylor, J. ¶7; Turner ¶9.

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

generally no public interest in the perpetuation of unlawful agency action. To the contrary, there is a substantial public interest in having governmental agencies abide by the federal laws that govern their existence and operations." *Newby*, 838 F.3d at 12 (citations and internal quotation marks omitted). The equities also weigh particularly strongly in Plaintiffs' favor due to the federal government's failure to consult with tribal leaders and other stakeholders, *supra* at 9-10, and its broken promise to digitize Alaska records that were moved to Seattle when NARA's Anchorage facility closed in 2014. *See* Smythe ¶7; Stein, G. ¶7; Goforth ¶¶6-7; Turner ¶10.[23] Any suggestion that the Seattle facility's records will be digitized rings hollow, and moving Alaska records even further away only adds insult to injury.[24]

## E.    A Preliminary Injunction Prohibiting the Sale Is Necessary and Appropriate

The Court should enjoin Defendants from selling the Seattle Archives facility to preserve the status quo *pendente lite*. " 'Crafting a preliminary injunction is an exercise of discretion and judgment, often dependent as much on the equities of a given case as the substance of the legal issues it presents.' " *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018) (quoting *Trump v. Int'l Refugee Assistance Project*, 137 S. Ct. 2080, 2087 (2017)). "The purpose of such interim equitable relief is not to conclusively determine the rights of the parties but to balance the equities as the litigation moves forward." *Id.* Plaintiffs contend that the sale of all twelve properties is procedurally deficient and thus unlawful. *See* Section III.B.3, *supra*. But Plaintiffs will only be irreparably harmed by the sale of the FASTA-exempt Seattle Archives facility, so the Court need only enjoin any further steps to effectuate or facilitate the sale of that facility.

## IV.    CONCLUSION

Plaintiffs respectfully request that this Motion be granted.

---

[23] *See also* H.R. 133 (Consolidated Appropriations Act, 2021), Explanatory Statement, Division E at 44-45, *available at* https://tinyurl.com/y65of8wa ("It is profoundly disappointing that NARA has failed to keep its commitment to digitize and post online using an easy-to-find, navigable, and searchable platform the Territorial and Federal records generated in Alaska since they were moved from Anchorage to Seattle more than 5 years ago.").

[24] *See, e.g.*, Brown ¶¶7-8; Haycox ¶6; House ¶15; Klingle ¶8; Norris ¶7; Parham ¶¶1-12; Peterson ¶¶13-14; Simeone ¶3; Smythe ¶¶3, 8-9; Stein, G. ¶7.

1    DATED this 7th day of January, 2021.

2                                    ROBERT W. FERGUSON
                                     Washington State Attorney General
3
                                     */s/ Lauryn K. Fraas*
4                                    LAURYN K. FRAAS, WSBA #53238
                                     NATHAN BAYS, WSBA #43025
5                                    KRISTIN BENESKI, WSBA #45478
                                     SPENCER COATES, WSBA #49683
6                                    Assistant Attorneys General
                                     Lauryn.Fraas@atg.wa.gov
7                                    Nathan.Bays@atg.wa.gov
                                     Kristin.Beneski@atg.wa.gov
8                                    Spencer.Coates@atg.wa.gov
                                     *Attorneys for Plaintiff State of Washington*
9

10                                   ELLEN F. ROSENBLUM
                                     Attorney General of Oregon
11
                                     */s/ Carla A. Scott*
12                                   CARLA A. SCOTT WSBA #54725
                                     Senior Assistant Attorney General
13                                   Trial Attorney
                                     100 SW Market Street,
14                                   Portland, OR 97201
                                     Tel (971) 673-1880
15                                   Fax (971) 673-5000
                                     Carla.A.Scott@doj.state.or.us
16                                   *Attorneys for Plaintiff State of Oregon*

17

18                                   THE CONFEDERATED TRIBES OF THE
                                     CHEHALIS RESERVATION
19
                                     */s/ Harold Chesnin*
20                                   HAROLD CHESNIN, WSBA #398
                                     Office of Tribal Attorney
21                                   Confederated Tribes of the Chehalis Reservation
                                     420 Howanut Road
22                                   Oakville, WA 98568
                                     360.529.7465
23                                   hchesnin@chehalistribe.org
                                     *Attorney for Plaintiff The Confederated Tribes of the
24                                   Chehalis Reservation*

25

26

1   CONFEDERATED TRIBES OF COOS, LOWER
    UMPQUA AND SIUSLAW INDIANS, and
2   SPOKANE TRIBE OF INDIANS

3   */s/ Richard K. Eichstaedt*
    RICHARD K. EICHSTAEDT, WSBA #36487
4   SCOTT WHEAT, WSBA #25565
    Wheat Law Offices
5   P.O. Box 9168
    Spokane, WA 99209
6   509.209.2604
    rick@wheatlawoffices.com
7   scott@wheatlawoffices.com
    *Attorneys for Plaintiffs Confederated Tribes of Coos,*
8   *Lower Umpqua and Siuslaw Indians, and Spokane*
    *Tribe of Indians*
9

10  COW CREEK BAND OF UMPQUA TRIBE OF
    INDIANS
11
    */s/ Gabriel S. Galanda*
12  GABRIEL S. GALANDA, WSBA #30331
    ANTHONY S. BROADMAN, WSBA #39508
13  RYAN D. DREVESKRACHT, WSBA #42593
    Galanda Broadman PLLC
14  P.O. Box 15416
    8606 35th Avenue NE, Suite L1
15  Seattle, WA 98115
    206.557.7509
16  gabe@galandabroadman.com
    anthony@galandabroadman.com
17  ryan@galandabroadman.com
    *Attorneys for Plaintiff Cow Creek Band of Umpqua*
18  *Tribe of Indians*

19

20

21

22

23

24

25

26

1   DOYON, LTD., TANANA CHIEFS CONFERENCE,
    and CENTRAL COUNCIL OF TLINGIT & HAIDA
2   INDIAN TRIBES OF ALASKA

3   */s/ Richard D. Monkman*
    LLOYD B. MILLER, *admitted pro hac vice*
4   RICHARD D. MONKMAN, WSBA #35481
    Sonosky, Chambers, Sachse, Miller & Monkman, LLP
5   725 East Fireweed Lane, Suite 420
    Anchorage, AK 99503
6   907.258.6377
    lloyd@sonosky.net
7   rdm@sonosky.net
    *Attorneys for Plaintiffs Doyon, Ltd., Tanana Chiefs*
8   *Conference, and Central Council of Tlingit & Haida*
    *Indian Tribes of Alaska*

9

10  DUWAMISH TRIBE

11  */s/ Bart J. Freedman*
    BART J FREEDMAN, WSBA #14187
12  BENJAMIN A. MAYER, WSBA #45700
    ENDRE M SZALAY, WSBA #53898
13  NATALIE J. REID, WSBA #55745
    ADAM N. TABOR, WSBA #50912
14  THEODORE J. ANGELIS, WSBA #30300
    K&L Gates LLP
15  925 Fourth Avenue, Suite 2900
    Seattle, WA 98104
16  206.370.7580
    bart.freedman@klgates.com ben.mayer@klgates.com
17  endre.szalay@klgates.com
    natalie.reid@klgates.com
18  adam.tabor@klgates.com
    theo.angelis@klgates.com
19  *Attorneys for the Duwamish Tribe*

20

21  CONFEDERATED TRIBES OF THE GRAND
    RONDE COMMUNITY OF OREGON
22
    */s/ Nathan Alexander*
23  NATHAN ALEXANDER, WSBA #37040
    Dorsey & Whitney, LLP
24  701 Fifth Avenue, Suite 6100
    Seattle, WA 98104-7043
25  206.903.8791
    alexander.nathan@dorsey.com
26  *Attorney for Plaintiff Confederated Tribes of The*
    *Grand Ronde Community of Oregon*

1

2

HOH INDIAN TRIBE, SAMISH INDIAN NATION, and CONFEDERATED TRIBES OF SILETZ INDIANS

3

*/s/ Craig J. Dorsay*
CRAIG J. DORSAY, WSBA #9245

4

LEA ANN EASTON, WSBA #38685
KATHLEEN GARGAN, WSBA #56452

5

Dorsay & Easton LLP
1737 Northeast Alberta Street, Suite 208

6

Portland, OR 97211
503.790.9060

7

craig@dorsayindianlaw.com
leaston@dorsayindianlaw.com

8

katie@dorsayindianlaw.com
*Attorneys for Plaintiffs Hoh Indian Tribe, Samish*

9

*Indian Nation, and Confederated Tribes of Siletz*

10

*Indians*

11

JAMESTOWN S'KLALLAM TRIBE

12

*/s/ Lauren P. Rasmussen*
LAUREN P. RASMUSSEN, WSBA #33256

13

Law Offices of Lauren P. Rasmussen, PLLC
1904 Third Avenue, Suite 1030

14

Seattle, WA 98101-1170
206.623.0900

15

lauren@rasmussen-law.com
*Attorney for Plaintiff Jamestown S'Klallam Tribe*

16

17

KALISPEL TRIBE OF INDIANS

18

*/s/ Lorraine A. Parlange*
LORRAINE A. PARLANGE, WSBA #25139

19

Senior Tribal Attorney
934 Garfield Road

20

Airway Heights, WA 99001
509.789.7603

21

lparlange@kalispeltribe.com
*Attorney for Plaintiff Kalispel Tribe of Indians*

22

23

24

25

26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

28

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

THE KLAMATH TRIBES

2

*/s/ Edmund Clay Goodman*
EDMUND CLAY GOODMAN, WSBA #37347

3

Hobbs Straus Dean & Walker, LLP
215 SW Washington Street, Suite 200

4

Portland, OR 97214
503.242.1745

5

egoodman@hobbsstraus.com
Attorney for Plaintiff The Klamath Tribes

6

7

MUCKLESHOOT INDIAN TRIBE

8

*/s/ Mary M. Neil*
MARY M. NEIL, WSBA #34348

9

ROBERT L. OTSEA, JR., WSBA #9367
DANIELLE BARGALA, WSBA #52718

10

39015 172nd Avenue S
Auburn, WA 98092

11

253.939.3311
rob@muckleshoot.nsn.us

12

mary.neil@muckleshoot.nsn.us
danielle.bargala@muckleshoot.nsn.us

13

*Attorneys for Plaintiff Muckleshoot Indian Tribe*

14

15

NEZ PERCE TRIBE

16

*/s/ Julie S. Kane*
JULIE S. KANE, WSBA #19138

17

Office of Legal Counsel
P.O. Box 305

18

Lapwai, ID 83540
208.843.7355

19

juliek@nezperce.org
*Attorney for Plaintiff Nez Perce Tribe*

20

21

NOOKSACK INDIAN TRIBE

22

*/s/ Charles N. Hurt, Jr.*
CHARLES N. HURT, JR., WSBA #46217

23

Office of Tribal Attorney
Senior Tribal Attorney

24

5047 Mt. Baker Hwy, P.O. Box 63
Deming, WA 98244

25

360.598.4158
churt@nooksack-nsn.gov

26

*Attorney for Plaintiff Nooksack Indian Tribe*

1    PORT GAMBLE S'KLALLAM TRIBE

2    */s/ Rogina D. Beckwith*

3    ROGINA D. BECKWITH, WSBA #36241
Port Gamble S'Klallam Tribe Legal Department
31912 Little Boston Road NE

4    Kingston, WA 98346
360.297.6242

5    ginab@pgst.nsn.us
*Attorney for Plaintiff Port Gamble S'Klallam Tribe*

6

7    PUYALLUP TRIBE OF INDIANS

8    */s/ Alec S. Wrolson*

9    ALEC S. WROLSON, WSBA #54076
FELECIA L. SHUE, WSBA #49911
LOIS Y. BOOME, WSBA #54883

10   LISA A.H. ANDERSON, WSBA #27877
3009 E. Portland Avenue

11   Tacoma, WA 98404
253.573.7877

12   alec.wrolson@puyalluptribe-nsn.gov
felecia.shue@puyalluptribe-nsn.gov

13   lois.boome@puyalluptribe-nsn.gov
lisa.anderson@puyalluptribe-nsn.gov

14   *Attorneys for Plaintiff Puyallup Tribe of Indians*

15

16   THE QUILEUTE TRIBE OF THE QUILEUTE
RESERVATION

17   */s/ Lauren J. King*

18   LAUREN J. KING, WSBA #40939
Foster Garvey, P.C.

19   1111 Third Ave., Suite 3000
Seattle, WA 98101

20   206.447.6286
lauren.king@foster.com

     *Attorney for Plaintiff Quileute Tribe*

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

30

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

QUINAULT INDIAN NATION

*/s/ Karen Allston*
KAREN ALLSTON, WSBA #25336
LORI BRUNER, WSBA #26652
Senior Assistant Attorneys General
Quinault Indian Nation Office of Attorney General
P.O. Box 613
Taholah, WA 98587
360.276.8211, ext. 1400
lbruner@quinault.org
kallston@quinault.org
*Attorneys for Plaintiff Quinault Indian Nation*


SKOKOMISH INDIAN TRIBE

*/s/ Earle David Lees, III*
EARLE DAVID LEES, III, WSBA #30017
Director of the Skokomish Legal Department
Skokomish Indian Tribe
N. 80 Tribal Center Road
Skokomish Nation, WA 98584
360.877.2100
elees@skokomish.org
*Attorney for Plaintiff Skokomish Indian Tribe*


SNOQUALMIE INDIAN TRIBE

*/s/ Rob Roy Smith*
ROB ROY SMITH, WSBA #33798
RACHEL B. SAIMONS, WSBA #46553
Kilpatrick Townsend & Stockton, LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
206.467.9600
rrsmith@kilpatricktownsend.com
rsaimons@kilpatricktownsend.com
*Attorneys for Plaintiff Snoqualmie Indian Tribe*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

31

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

SQUAXIN ISLAND TRIBE

*/s/ David Babcock*
DAVID BABCOCK, WSBA #31737
Attorney, Squaxin Island Tribe
3711 SE Old Olympic Hwy
Shelton, WA 98584
360.432.1771
*Attorney for Plaintiff Squaxin Island Tribe*


SUQUAMISH TRIBE

*/s/ James Rittenhouse Bellis*
JAMES RITTENHOUSE BELLIS, WSBA #29226
Director, Office of Tribal Attorney
Suquamish Tribe
P.O. Box 498
Suquamish, WA 98392
360.394.8501
Shelton, WA 98584
360.432.1771
rbellis@suquamish.nsn.us
*Attorney for Plaintiff Suquamish Tribe*


SWINOMISH INDIAN TRIBAL COMMUNITY

*/s/ Emily Haley*
EMILY HALEY, WSBA #38284
Office of the Tribal Attorney
11404 Moorage Way
La Conner, WA 98257
360.466.3163
ehaley@swinomish.nsn.us
*Attorney for Plaintiff Swinomish Indian Tribal
Community*


UPPER SKAGIT INDIAN TRIBE

*/s/ David S. Hawkins*
DAVID S. HAWKINS, WSBA #35370
General Counsel
Upper Skagit Indian Tribe
25944 Community Plaza Way
Sedro-Woolley, WA 98284
360.854.7016
dhawkins@upperskagit.com
*Attorney for Plaintiff Upper Skagit Indian Tribe*

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

32

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

CONFEDERATED TRIBES AND BANDS OF THE
YAKAMA NATION

2

3

*/s/ Ethan Jones*
ETHAN JONES, WSBA #46911
ANTHONY ARONICA, WSBA #54725
Yakama Nation Office of Legal Counsel
P.O. Box 151, 401 Fort Road
Toppenish, WA 98948
509.865.5121
ethan@yakamanation-olc.org
anthony@yakamanation-olc.org
*Attorneys for Plaintiff Confederated Tribes and Bands
of the Yakama Nation*

4

5

6

7

8

9

AMERICAN HISTORICAL ASSOCIATION

10

*/s/ Harry H. Schneider, Jr.*
HARRY H. SCHNEIDER, JR., WSBA #9404
Perkins Coie LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
206.359.8000
hschneider@perkinscoie.com

11

12

13

14

*/s/ Alison M. Dreizen*
ALISON M. DREIZEN, *pro hac vice pending*
Carter Ledyard & Milburn LLP
Two Wall Street
New York, NY 10005
212.238.8855
dreizen@clm.com
*Attorneys for Plaintiff American Historical
Association*

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

| | |
|---|---|
| 1 | ASSOCIATION OF KING COUNTY HISTORICAL ORGANIZATIONS, HISTORIC SEATTLE, |
| 2 | HISTORYLINK, MUSEUM OF HISTORY AND INDUSTRY, and WASHINGTON TRUST FOR |
| 3 | HISTORIC PRESERVATION |
| 4 | */s/ Paul J. Lawrence* |
| 5 | PAUL J. LAWRENCE, WSBA #13557 ALANNA E. PETERSON, WSBA #46502 |
| 6 | Pacific Law Group 1191 2nd Avenue, Suite 2000 |
| 7 | Seattle, WA 98101-3404 206.245.1700 |
| 8 | alanna.peterson@pacificalawgroup.com paul.lawrence@pacificalawgroup.com |
| 9 | *Attorneys for Plaintiffs Association of King County Historical Organizations, Historic Seattle,* |
| 10 | *HistoryLink, Museum of History and Industry, and Washington Trust For Historic Preservation* |
| 11 | |
| 12 | CHINESE AMERICAN CITIZENS ALLIANCE |
| 13 | */s/ Darin Sands* DARIN SANDS |
| 14 | HEIDI B. BRADLEY Bradley Bernstein Sands |
| 15 | P.O. Box 4120, PMB 62056 Portland, OR 97208-4120 |
| 16 | 503.734.2480 dsands@bradleybernsteinllp.com |
| 17 | hbradley@bradleybernsteinllp.com *Attorneys for Plaintiff Chinese American Citizens* |
| 18 | *Alliance* |
| 19 | OCA ASIAN PACIFIC ADVOCATES – GREATER SEATTLE |
| 20 | |
| 21 | */s/ Bernadette Connor* BERNADETTE CONNOR, WSBA #45844 |
| 22 | 1800 Cooper Point Road SW, Suite 12 Olympia, WA 98502 |
| 23 | 206.552.9666 byconnor@gmail.com |
| 24 | *Attorney for Plaintiff OCA Asian Pacific Advocates – Greater Seattle* |
| 25 | |
| 26 | |

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   WING LUKE MEMORIAL FOUNDATION d/b/a
    WING LUKE MUSEUM

2
    /s/ Gloria Lung Wakayama
3   GLORIA LUNG WAKAYAMA, WSBA #11892
    Harris & Wakayama, PLLC
4   601 Union Street, Suite 2600
    Seattle, WA 98101
5   206.621.1818
    glwakayama@hmwlaw.com
6   Attorney for Plaintiff Wing Luke Memorial Foundation
    d/b/a Wing Luke Museum
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

35

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

## <u>DECLARATION OF SERVICE</u>

2       I hereby declare that on this day I caused the foregoing document to be electronically

3   filed with the Clerk of the Court using the Court's CM/ECF System which will send notification

4   to counsel that have appeared in this case. I also caused a true and correct copy of the foregoing

5   document to be served via hand delivery upon the following:

6       United States Attorney's Office
        700 Stewart Street, Suite 5220
7       Seattle, WA 98101-1271

8       I also caused a true and correct copy of the foregoing document to be served via certified

9   mail upon the following:

10      Russell Vought, Director
        Office of Management and Budget
11      725 17th Street, NW
        Washington, DC 20503
12

        Public Buildings Reform Board
13      1800 F Steet NW, Suite 5116
        Washington, DC 20405
14
        Office of Management and Budget
15      725 17th Street, NW
        Washington, DC 20503
16
        National Archives and Records Administration
17      8601 Adelphi Road
        College Park, MD 20740-6001
18
        Emily W. Murphy, Administrator
19      Office of the Administrator
        U.S. General Services Administration
20      1800 F Street, NW
        Washington, DC 20405
21
        U.S. General Services Administration
22      1800 F Street NW
        Washington, DC 20405
23
        David S. Ferriero, Archivist
24      National Archives and Records Administration
        8601 Adelphi Road
25      College Park, MD 20740-6001

26

Adam Bodner, Executive Director
Public Buildings Reform Board
1800 F Street NW, Suite 5116
Washington, DC 20405-0001

DATED this 7th day of January, 2021, at Seattle, Washington.

                        */s/ Lauryn K. Fraas*
                        LAURYN K. FRAAS, WSBA #53238
                        Assistant Attorney General

PLAINTIFFS' MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:21-cv-00002-JCC

37

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744