1
2
3
4
5
6
                                        The Honorable John C. Coughenour
7
8
**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**
9

| | |
|---|---|
| STATE OF WASHINGTON, et al. | NO. 2:21-cv-00002-JCC |
|        Plaintiffs, | PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND PROPOSED FORM OF INJUNCTIVE RELIEF |
|   v. | |
| ROB FAIRWEATHER, et al., | |
|        Defendants. | |

15        Pursuant to the Court's Order (Dkt. #31) dated January 27, 2021, Plaintiffs submit the

16 following proposed findings of fact and conclusions of law and a proposed form of injunctive

17 relief.

18         **I.     PLAINTIFFS' PROPOSED FINDINGS OF FACT**

19 **A.    The Parties**

20        1.    The forty-nine Plaintiffs in this case are State and local governments; tribal

21 governments, Alaska Native Corporations, and tribal communities; and historical and cultural

22 organizations. Dkt. #30 (First Amended Complaint) ¶¶17–66.

23        2.    Defendants are the Office of Management and Budget (OMB), National Records

24 Administration (NARA), Public Buildings Reform Board (PBRB), and General Services

25 Administration (GSA), and the heads of those agencies in their official capacities. Dkt. #30 (First

26 Amended Complaint) ¶¶67–74.

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

1

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**B.**     **The National Archives at Seattle**

3.     The Federal Archives and Records Center in Seattle (Archives facility) is located at 6125 Sand Point Way NE, Seattle, WA 98115, and houses the National Archives at Seattle. It is currently occupied and operated by Defendant NARA, and is owned by Defendant GSA. Dkt. #16-1 at 109–10 (Fraas Ex. 5 at A-68).

4.     The Archives facility houses the permanent, irreplaceable federal records of Washington, Oregon, Alaska, and Idaho that are particularly important to residents of the Pacific Northwest region, such as census and genealogical records, tribal records, records related to the Chinese Exclusion Act and immigration, and records related to the internment of Japanese Americans during World War II. Many of these records are unique, original documents, and the vast majority are un-digitized and not available online.

5.     The Archives facility is routinely used by the agencies and public universities of Plaintiffs Washington and Oregon. The Washington State Department of Natural Resources and Department of Archaeology and Historic Preservation use the Seattle Archives to carry out their functions, which will be impeded if those records are moved over a thousand miles away. *See* Dkt. #17-1 (Bower ¶¶2–13; Brooks ¶¶2–9). State universities and their museums use the Seattle Archives to fulfill their functions. *See id.* (Wilson ¶¶ 9, 11, 13, 17–21, 27; Nash ¶¶2-10; Kucher ¶¶2, 6–10; Gregory Ltr.; Bond ¶¶8–12, 14, 17; Reid ¶¶4–9; Rushforth ¶¶4–5, 7–8, 10–11; Deitering ¶¶3–4, 6; Stein, J. ¶¶6–7). As these declarations attest, physical access to the records contained at the Archives is critical to the success of research and historical projects for these state institutions and for university research and recruiting.

6.     The Archives facility's tribal and treaty records also hold great value for Tribes, Alaska Native Corporations, and tribal members and communities, who are uniquely dependent on the facility's records for core tribal functions and cultural preservation, including applying for federal recognition or restoration, establishing tribal membership, demonstrating and enforcing tribal rights to fishing and hunting, defending tribal sovereignty, implementing historic

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

2

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

preservation efforts, and conducting cultural anthropology work. *See id.* (Fisher ¶8; Gomez ¶¶4, 8; Geyer ¶¶5–18; Hansen ¶¶3–4, 7; Harrelson ¶¶4–6, 9; Krise ¶¶5, 7; Pickernell ¶¶4–6, 9; Reynon ¶¶4–5, 9; Saluskin ¶5; Schutt ¶¶6–7; Forsman Statement; Reich ¶¶ 6–8; Simon ¶¶9–19; Stiltner ¶¶9–11; Strong ¶¶6–11; Taylor, A. ¶10; de los Angeles ¶9; Foster ¶4; King George ¶16; Kentta ¶¶5–7; Stiltner ¶¶4–8; Thomas ¶6; Trebon ¶ 4–6). For many tribal members, the Archives documents are "not just boxes of historical records," but offer a profoundly tangible connection to their history. *Id.* (Hall ¶5; Farrar ¶7).

7.      The Archives facility also contains over 50,000 case files related to the Chinese Exclusion Act of 1882, a critical resource for historical preservation organizations and Chinese Americans seeking information about their ancestors. Dkt. #30 (First Am. Compl.) ¶¶94–97.

8.      In addition, the Archives facility—which sits on land farmed by the Uyeji family before their forced internment in 1942, and now houses internment-related records—has special significance for the local Japanese American community. *Id.* (First Am. Compl.) ¶¶98-100.

**C.      The Archives Facility's Use in Connection with Federal Programs**

9.      Plaintiffs submitted numerous sworn declarations attesting to the use of the Archives facility in connection with various Federal conservation, agricultural, and recreational programs. *See* Dkt. #17-1 (Abe ¶5; Allen ¶5; Booth ¶6; Bossley ¶¶14–17, 21; Brooks ¶¶2–9; Carter ¶4; Geyer ¶¶6–9, 10–16; Harrelson ¶6; House ¶¶11–12, 13, 15, 18; King George ¶6; Mansfield ¶¶6–8; McCaffrey ¶¶6–7; Nash ¶9; Norris ¶5; Parham ¶¶7–10; Peterson ¶¶8–12; Schutt ¶7; Simon ¶¶17–19; Smythe ¶¶4–6; Stein, G. ¶¶2–3; Stiltner ¶¶4–8; Strong ¶10; Sullivan, J. ¶¶5–9; Sullivan, M. ¶¶5–11; Thomas ¶¶2, 5–6; Tushingham ¶6; Wilson ¶¶24–25; Wisniewski ¶¶6, 8–9.). Defendants did not submit any evidence rebutting these declarations.

10.     Seattle Archives records are needed for research in connection with many federal programs for agricultural, recreational, or conservation purposes, including programs related to resource management and historical use of National Park Service (NPS) lands. Dkt. #17-1 (Norris ¶5). The NPS "preserves unimpaired the natural and cultural resources and values of the

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

3

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    National Park system," working to "extend the benefits of natural and cultural resource

2    conservation and outdoor recreation" nationwide. Dkt. #16-1 at 5 (Fraas Ex. 1).

3         11.    According to the sworn declarations herein, researchers have used Archives

4    records for NPS-funded projects to guide the management of San Juan Island National Park;

5    document and conserve historic places important to Latino and African American communities

6    in the Pacific Northwest; and identify Alaska Native historic sites eligible for selection under the

7    Alaska Native Claims Settlement Act of 1971, which transferred land titles to Alaska Native

8    corporations. Dkt. #17-1 (Nash ¶9; Sullivan, M. ¶11; Smythe ¶4; Stein, G. ¶¶2–3). Through a

9    Japanese American Confinement Sites Grant, NPS also recently funded Archives research used

10   to aid visitor interpretation at several national historic sites. *Id.* (Abe ¶5). Archives research also

11   has been used to develop visitor education materials, exhibits, and trailhead and trail signage for

12   U.S. Forest Service projects at national parks and trails in the Pacific Northwest and Alaska.

13   Dkt. #16-1 (Booth ¶6; Allen ¶5; Smythe ¶6; Mansfield ¶8). And the Wing Luke Museum, a

14   Smithsonian affiliate and NPS Affiliated Area, alleges it uses the Archives in connection with

15   its mission. Dkt. #30 (FAC) ¶66.

16        12.    Other federal agencies likewise use the Seattle Archives or fund Archives

17   research for ecological conservation programs, including the U.S. Department of Fish and

18   Wildlife, U.S. Army Corps of Engineers (USACE), Bureau of Land Management, and National

19   Oceanic and Atmospheric Administration (NOAA) among others discussed below. Dkt. #17-1

20   (House ¶¶11–12; Parham ¶7; Wilson ¶24).

21        13.    According to numerous declarations submitted by leaders and members of

22   Plaintiff Tribes, the Tribes also make extensive use of the Archives facility in connection with

23   federal conservation, agricultural, and recreational programs. Many such programs are carried

24   out with federal funding provided under the Indian Self-Determination and Education Assistance

25   Act of 1975, as amended (ISDEAA), 25 U.S.C. §§ 5301–5423, as well as grants from various

26   federal agencies. For example, the Archives facility is used for research related to ecological

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

4

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

conservation, climate change impact assessment, and natural resource management programs; research for federally funded Tribal Timber, Fish & Wildlife programs and archaeological, cultural and ecological conservation purposes; research for conservation programs funded by ISDEAA, the Environmental Protection Agency (EPA), USACE, and NPS; research for conservation programs funded by NOAA, EPA, and the Bureau of Indian Affairs (BIA); research for conserving federal lands in Alaska, including under the Alaska National Interest Lands Conservation Act; and research for federally funded historic conservation research and environmental cleanup work. Dkt. #17-1 (Sullivan, J. ¶¶5–9; Thomas ¶¶2, 5–6; Stiltner ¶¶4–8; Geyer ¶¶6, 10–16; Strong ¶10; Peterson ¶¶8–12; Simon ¶¶17–19; Schutt ¶7; Peterson ¶9; Wisniewski ¶¶6, 8–9; Bossley ¶¶14–17, 21; Parham ¶¶7–10; Mansfield ¶¶6–8; Thomas J. ¶6; Stiltner ¶¶4–8; King George ¶6). The Klamath Tribes also recently used the Archives for research to protect treaty-reserved water rights in the Klamath River Basin in connection with a long-term federal restoration project to store and divert water for irrigation and habitat conservation. *Id.* (Gentry ¶11).

14.     In general, tribal governments rely on the Archives for claims under the Native American Graves Protection and Repatriation Act and government-to-government relations, as well as to resolve land and water rights issues. *Id.* (Klingle ¶5; Taylor, J. ¶5; Gentry ¶11).

15.     In addition, a U.S. Department of Agriculture Specialty Crop Block Grant is funding a Washington agricultural history project that will require Archives research related to irrigation, soil conservation, transportation, and educational programs. *Id.* (McCaffrey ¶6).

16.     NPS's National Register of Historic Places (the National Register) is another Federal conservation program that routinely involves use of the Archives. The National Register is "part of a national program to coordinate and support public and private efforts to identify, evaluate, and protect America's historic and archaeological resources." Dkt. #16-1 at 9 (Fraas Ex. 2). It is authorized by the National Historic Preservation Act of 1966 (NHPA), which defines "historic preservation" to include "conservation" of historic properties. 54 U.S.C.

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

5

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

§ 300315(1). As established by multiple declarations in the record, nominating a property for inclusion on the National Register generally requires extensive use of the National Archives facility to establish the relevant criteria. Dkt. #17-1 (Brooks ¶¶2–9,  Sullivan, M. ¶¶5–11; Carter ¶4; Geyer ¶¶6–9; McCaffrey ¶7; Smythe ¶5; Tushingham ¶6; Wilson ¶25; Harrelson ¶6; Bossley ¶¶14–17, 21).

17.     Properties listed on the National Register are eligible for the Historic Tax Credit program. *Id.* (Brooks ¶¶6–7). As relevant to this program, the Internal Revenue Code defines "conservation purpose" to include "the preservation of an historically important land area or a certified historic structure." I.R.C. § 170 (h)(4)(A).

18.     Other similar programs include NPS's Tribal Preservation Program, Historic American Buildings Surveys, Historic American Engineering Records, and Federal Certified Local Government program, which also conserve historical properties based on information obtained from the Archives. Dkt. #17-1 (Brooks ¶8; McCaffrey ¶7; Wisniewski ¶6).

19.     NARA, which operates the Archives facility, has several "Preservation Programs," including a "Conservation Division" that is generally responsible for document conservation. The Conservation Division's page on NARA's website states: "We assess the condition of the records and identify their composition, and we stabilize and treat documents to prepare them for digitization, exhibition, and use by researchers." Dkt. #16-1 at 11 (Fraas Ex. 3). NARA also has a unit known as the "Document Conservation Laboratory" or "Conservation Lab." *Id.* at 13–15 (Fraas Ex. 4). According to NARA's website, the Conservation Lab "is responsible for conservation activities which contribute to the prolonged usable life of records in their original format." *Id.* at 13 (Fraas Ex. 4). Among other activities, the Conservation Lab "repairs and stabilizes textual records (un-bound papers, bound volumes, and cartographic items) and photographic images among the holdings of [NARA] and provides custom housings for these records as needed." *Id.* According to a sworn declaration submitted by a recently retired NARA Seattle employee, NARA conducts conservation-related activities as to documents

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

6

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  housed at the Seattle Archives facility, and staff at the Seattle Archives facility conduct

2  conservation work themselves. Dkt. #17-1 (House Decl. ¶¶13, 15, 18).

3  **D.     FASTA's Procedural Requirements**

4       20.     FASTA, Pub. L. No. 114-287, 130 Stat. 1463 (2016), as amended, establishes a

5  process for selling federal real property on an expedited basis. The statute created an independent

6  Public Buildings Reform Board (the PBRB) and a process for the PBRB to identify and

7  recommend real property assets for disposal over a specified period, after which the PBRB will

8  disband. *Id.* §§ 4, 10, 12.

9       21.     Certain property types are excluded from the definition of "Federal civilian real

10  property" that is subject to sale under FASTA. FASTA § 3(5). One type of exempt property is:

11  "Properties used in connection with Federal programs for agricultural, recreational, or

12  conservation purposes, including research in connection with the programs." *Id.* § 3(5)(B)(viii).

13       22.     FASTA Section 11 establishes a multi-step process to ensure the PBRB has the

14  needed decision-making framework and data to recommend properties for sale. The first step is

15  for federal agencies to make initial recommendations. FASTA § 11(a)(2). This must be done

16  "[n]ot later than 120 days after the date of enactment of this Act, and not later than 120 days

17  after the first day of each fiscal year thereafter until termination of the Board[.]" *Id.* § 11(a).

18       23.     The second step is for the Office of Management and Budget (OMB) to "develop

19  consistent standards and criteria against which the agency recommendations will be reviewed,"

20  *id.* § 11(b)(1)(B), and, with GSA, to "jointly develop recommendations to the [PBRB] based on

21  the standards and criteria developed under paragraph (1)." *Id.* § 11(b)(2). "In developing the

22  standards and criteria under paragraph (1)," OMB and GSA "shall incorporate" ten enumerated

23  factors, including, *inter alia*, "[t]he extent to which a civilian real property aligns with the current

24  mission of the Federal agency" and "[t]he extent to which public access to agency services is

25  maintained or enhanced." *Id.* §§ 11(b)(3)(F), (J). In addition, the standards developed by OMB

26

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

7

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

under FASTA Section 11 "shall incorporate and apply clear standard utilization rates to the extent that such standard rates increase efficiency and provide performance data." *Id*. § 11(c).

24.     The third step is for OMB to "submit the standards, criteria, and recommendations . . . to the [PBRB] with all supporting information, data, analyses, and documentation." *Id*. § 11(d)(1); *see also* § 11(b)(1)(C). This must be done "[n]ot later than 60 days after the deadline for submission of agency recommendations under subsection (a)[.]" *Id*. § 11(b)(1). "The standards, criteria, and recommendations developed pursuant to subsection (b) shall be published in the Federal Register and transmitted to the [congressional] committees listed in section 5(c) and to the Comptroller General of the United States." *Id*. § 11(d)(2).

25.     Section 12 of FASTA sets forth the PBRB's duties, which include recommending "Federal civilian real properties" for sale or disposal. The PBRB must make its recommendations within 180 days after a quorum of Board members is appointed. *Id.* § 12(b)(1). In doing so, the PBRB "shall consider the factors listed in section 11(b)(3)." *Id*. § 12(b)(1)(B). The PBRB's recommendations are transmitted to OMB, *id.* § 12(b)(1)(B), and under Section 13, OMB then reviews the PBRB's recommendations and approves or disapproves them. *Id*. §§ 13(a)–(b).

26.     Section 18 of FASTA provides that "[a]ctions taken pursuant to sections 12 and 13" and "[a]ctions of the [PBRB]" are exempt from judicial review. FASTA § 18. All other acts or omissions under FASTA are reviewable. *See id*.

**E.     Defendants' Decision to Sell the Archives Facility**

27.     A quorum of five PBRB members was not sworn in until May 2019. Dkt. #16-1 at 25 (Fraas Ex. 5). This gave the PBRB until November 2019 to make its recommendations to OMB. *See* FASTA § 12(b)(1).

28.     As the PBRB publicly acknowledged in its "High Value Assets Report" to OMB, it "encountered significant challenges as it developed the [High Value Asset] disposal recommendations" required by FASTA. Dkt. #16-1 at 35 (Fraas Ex. 5). Specifically, FASTA required the PBRB, not later than 180 days after a quorum of members was appointed, to identify

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

8

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

for disposal not fewer than five Federal civilian real properties, that were not on the list of surplus or excess, with a total fair market of not less than $500 million and not more than $750 million, and transmit the list of properties to the Director of OMB as Board recommendations. FASTA, § 12(b)(1). According to the agency, "FASTA's aggressive timeframe forced the PBRB to focus on properties already for sale and unneeded vacant land that can be sold quickly." Dkt. #16-1 at 35 (Fraas Ex. 5).

29.     In addition to challenges caused by FASTA's accelerated statutory timeframe, the PBRB faced additional "formidable" challenges "due to the procedure and time required to qualify the PBRB as an independent agency." *Id.* As a result, "PBRB members did not have Government ID's for over 2 months after being sworn in, and the PBRB had no staff for the first 4 months, leaving substantial work to be accomplished in just 8 weeks." *Id.*

30.     It is undisputed that prior to the PBRB recommending properties for sale under Section 12 of FASTA, OMB and GSA never developed the "standards and criteria" or "recommendations" described in FASTA Section 11(b). Nor did OMB provide the "information, data, analyses, and documentation" underlying its nonexistent "standards, criteria, and recommendations," to the PBRB as required by Section 11(d)(1). OMB further failed to publish its nonexistent "standards, criteria, and recommendations" in the Federal Register, transmit them to the specified Congressional Committees, and transmit them to the Comptroller General of the United States as required by Section 11(d)(2).

31.     On October 31, 2019, approximately five months after a quorum of the Board was established, the PBRB notified OMB that it was submitting its first set of recommendations pursuant to Section 11 of FASTA.[1] The PBRB included with its three-page letter a one-page list of fourteen High Value Asset properties that it recommended for disposal. One of those

---

[1] Letter from the PBRB to OMB (Oct. 31, 2019), https://www.pbrb.gov/assets/uploads/PBRB%20Official%20Recommendations%20to%20OMB%2010_31_2019.pdf (last visited Feb. 9, 2020).

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

9

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    properties was the National Archives at Seattle. The only information contained on the list was

2    the name, location, and custodial agency of each property.

3        32.    On November 27, 2019, OMB notified the PBRB that it disapproved of the

4    recommendations due to a lack of supporting information or financial execution plan.[2] OMB

5    gave the PBRB 30 days to resubmit its recommendations.

6        33.    On December 27, 2019, the PBRB submitted a revised list to OMB of twelve

7    properties for proposed sale, one of which was the National Archives at Seattle, along with its

8    "High Value Assets Report" (the PBRB Report) that included the purported bases for its

9    proposals. Dkt. #16-1 at 16–123 (Fraas Ex. 5). The PBRB Report acknowledged, but did not

10   analyze, the FASTA exemption for "[p]roperties used in connection with Federal programs for

11   agricultural, recreational, or conservation purposes[.]" *Id.* at 30.

12       34.    In its Report, the PBRB further acknowledged that "[u]nfortunately, [it] did not

13   benefit from the Section 11 FASTA directive that OMB, in consultation with GSA, develop

14   standards and criteria to use in evaluating agency submissions and making recommendations to

15   the PBRB," because they were "never developed." *Id.* at 33. The PBRB Report further stated

16   that "defined standards, criteria, and recommendations would have significantly reduced the

17   PBRB's challenges." *Id.* at 35. Without the "standards, criteria, and recommendations" along

18   with "all supporting information, data, analyses, and documentation," the PBRB had to rely on

19   other information. FASTA, § 11(d)(1). But, as the PBRB acknowledged, it "faced . . . challenges

20   in gathering the data needed to support decision making for complex real estate transactions."

21   *Id.* at 35–36. Indeed, the PBRB identified "extraordinary issues with data gaps and data integrity"

22   in the data contained in the Federal Real Property Profile, which it "relied heavily on" for its

23   decision-making. *Id.* at 36.

24

25

26       [2] Letter from OMB to the PBRB (Nov. 27, 2019), https://www.pbrb.gov/assets/uploads/OMB%20Official%20Response%20to%20PBRB%20Recommendations%2011_27_2019.pdf (last visited Feb. 9, 2020).

PLAINTIFFS' PROPOSED FINDINGS OF          10          ATTORNEY GENERAL OF WASHINGTON
FACT AND CONCLUSIONS OF LAW                          Complex Litigation Division
AND PROPOSED FORM OF                                 800 5th Avenue, Suite 2000
INJUNCTIVE RELIEF                                    Seattle, WA 98104-3188
NO. 2:21-cv-00002-JCC                                (206) 464-7744

35.     Defendants submitted a sworn declaration stating that the Archives facility was identified for potential sale by a private contractor of GSA and submitted to the PBRB by "the private sector" under FASTA § 12(d)(1), and argued that this is a process separate from FASTA Section 11. Dkt. #34 (Dugan Decl.).

36.     However, a document produced by the PBRB in response to the State of Washington's FOIA request indicates that the Seattle Archives facility was among the "Additional Recommendations Identified by GSA for Board Consideration." This is consistent with the PBRB's High Value Assets Report, which indicates that GSA—not the private sector—identified "additional FASTA candidates through analysis of the FRPP database." Dkt. #16-1 at 29 (Fraas Ex. 5); *see also id.* at 25 (thanking GSA's Public Buildings Service department for "additional in-depth analysis of FRPP data to identify other potential FASTA candidates"). Under FASTA, Section 11 applies to property recommendations by federal agencies.

37.     In recommending and selecting the Archives facility for sale, Defendants did not notify or consult with tribal leaders or other stakeholders in the Pacific Northwest regarding the Archives facility's potential sale. *See* Dkt. #17-1 (de los Angeles ¶5; Bossley ¶19; Gentry ¶14; King George ¶¶13–15; Gomez ¶7; Harrelson ¶¶7–8; James ¶¶7–8; Johnson ¶¶4–12; Krise ¶6; Matheson ¶8; Pickernell ¶¶7–8; Pierre ¶7; Saluskin ¶7; Schutt ¶¶10–11; Simon ¶20; Stiltner ¶¶8-9; Strong ¶12; Sullivan, J. ¶¶10–17; Taylor, A. ¶¶8–9; Thomas ¶¶7–8; Wooten ¶5; Abe ¶6; Booth ¶7; Carter ¶6; Fisher ¶¶9–10; Klingle ¶¶6–7; Lee ¶15; Norris ¶6; Rushforth ¶10; Taylor, J. ¶6; Carter ¶6). In an October 2020 PBRB meeting, a Board member acknowledged that Tribes were not consulted in selecting properties, stating that "[w]ith respect to tribal entities, I guess, that hasn't been brought to our attention before that there was an interest there," while acknowledging "if they are a stakeholder in a property, certainly we would want to consult with them." Dkt. #16-1 at 139 (Fraas Ex. 7).

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

11

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

38.    No public meetings or hearings were held in Washington, Idaho, Oregon, or Alaska—and in the meetings and hearings held elsewhere, the potential sale of the Seattle Archives facility was never mentioned.

39.    After the sale decision became public, many tribal representatives and others sent letters seeking reconsideration. Dkt. #17-1 (Stiltner Exs. B–C; Sullivan, J. Ex. G; Bond Ex. 1; Turner Ex. 1). Defendants did not change their decision to sell the Archives facility.

40.    On January 24, 2020, OMB summarily approved the sale of the Archives facility and the other properties. Dkt. # 16-1 at 159–60 (Fraas Ex. 11).

41.    On January 27, 2020, NARA issued a press release in which it indicated that it had "requested to stay in the building for an additional three years following the sale" of the Archives facility. It further acknowledged that "closure of our facility will have a negative impact on researchers, Federal agencies, and other customers that use our facility."[3]

42.    While NARA's press release also states that it is "planning to extend [its] digitization efforts to make more records available free of charge and regardless of location," *id.*, NARA has previously failed to keep its commitments with respect to digitization. The Explanatory Statement accompanying Division E of H.R. 133 (Consolidated Appropriations Act, 2021), states: "It is profoundly disappointing that NARA has failed to keep its commitment to digitize and post online using an easy-to-find, navigable, and searchable platform the Territorial and Federal records generated in Alaska since they were moved from Anchorage to Seattle more than 5 years ago." H.R. 133, Explanatory Statement, Division E at 44–45, *available at* https://tinyurl.com/y65of8wa (last visited Feb. 9, 2021).

43.    The PBRB Report indicates that, once the Archives facility is sold, its records will be shipped to other NARA facilities in Southern California and Missouri. Dkt. #16-1 at 113 (Fraas Ex. 5 at A-71).

_____

[3] NARA Press Release, Seattle Facility Approved for Closure (Jan. 27, 2020), https://www.archives.gov/press/press-releases/2020/nr20-37.

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

44.     On February 3, 2020, the State of Washington submitted FOIA requests to the PBRB, OMB, GSA, and NARA regarding the proposed sale of the Archives Facility, and later sued to obtain the documents. *See* Dkt. #5. On January 5, this Court, per the Honorable Robert S. Lasnik, ordered the PBRB to respond in full to the State's FOIA request by February 4, 2021. *State of Washington v. Public Buildings Reform Board*, No. 2:20-cv-01362-RSL, Dkt. #18 (Jan. 5, 2021). This included documents that had been "identified by the Public Buildings Reform Board as of July 22, 2020" but never provided to the State of Washington. *Id.* One of the documents produced in response to the order was filed in this case.

45.     On November 30, 2020, the State of Washington learned that the federal government intends to bundle the Archives facility with the other FASTA properties and sell them as "a single portfolio," and that "[t]he Government intends to bring the properties to market by early 2021." Dkt. #16 (Fraas Decl.) ¶15; Dkt. # 16-1 at 161–62 (Fraas Ex. 12). Defendants did not alert Plaintiffs of this decision nor seek their input. Dkt. #16 (Fraas Decl.) ¶15.

46.     On December 4, 2020, the State of Washington publicly announced its intention to challenge the sale of the Archives facility.[4]

47.     On January 4, 2021, Plaintiffs filed their Complaint in this matter. Dkt. #1. On January 25, 2021, Plaintiffs filed their First Amended Complaint, adding ten additional Plaintiffs. Dkt. #30.

**F.      Harm to Plaintiffs as a Result of the Sale**

48.     The sale and closure of the Archives facility under FASTA and the subsequent removal of NARA's archival records from the Pacific Northwest will significantly impede Plaintiffs' access to documents on which they rely.

49.     Travel outside of the Pacific Northwest to access the archival records needed for these foundational purposes is simply not feasible for many Plaintiff Tribes and their members.

---

[4] News Release, AG Ferguson Intends to File Lawsuit Against Trump Administration to Prevent, Imminent Sale of National Archives Building in Seattle (Dec. 4, 2020), https://www.atg.wa.gov/news/news-releases/ag-ferguson-intends-file-lawsuit-against-trump-administration-prevent-imminent.

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND PROPOSED FORM OF INJUNCTIVE RELIEF NO. 2:21-cv-00002-JCC

13

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1     Some lack the financial resources to access these records on a necessary basis if they are moved

2     out of the Pacific Northwest. A move would increase travel costs for gaining access to materials

3     in person and in some cases prevent access due to lack of funds to access the materials.

4     Dkt. #17-1 (Gentry ¶14; Gomez ¶¶6, 8; Harrelson ¶9; James ¶9; Krise ¶7).

5         50.    At a minimum, these documents will be inaccessible for an unknown time period

6     during transit and processing, and could be separated or even irreparably damaged during the

7     move. *Id.* (Bossley ¶22; Fisher ¶8; Gentry ¶¶13–14; King George ¶16; Harrelson ¶9; House ¶14;

8     Saluskin ¶¶6, 9; Taylor, A. ¶5).

9         51.    Many historians and community members expound not only on the importance

10    of access to original documents, but also on the benefits of being able to visit the Archives in

11    person, browse its records, and benefit from the knowledge of its local staff. Dkt. #17-1 (Bond

12    ¶¶9, 16; Coen ¶¶3–4; Fisher ¶¶4–6, 12; Hall ¶4; House ¶¶ 3–6, 9; Klingle ¶8; Nicola, R. ¶3;

13    Nimura ¶3; Oberg ¶8; Reich ¶¶6–8; Schutt ¶5; Smythe ¶3; Sullivan, M. ¶12; Taylor, J. ¶5, 7;

14    Turner ¶4; Wilson ¶26; Wisniewski ¶11). This critical usage and access will be lost if the sale

15    moves forward and the Pacific Northwest's archival records are shipped far away. *Id.* (Oberg ¶8;

16    Nicola, P. ¶6; Thrush ¶5; Stein, J. ¶11; Taylor, J. ¶7; Turner ¶9).

17                    **II.    PLAINTIFFS' PROPOSED CONCLUSIONS OF LAW**

18    **A.    The Court Has Subject-Matter Jurisdiction**

19        1.    The Court has subject-matter jurisdiction over this case. FASTA Section 18

20    provides that "[a]ctions taken pursuant to sections 12 and 13" and "[a]ctions of the Board" are

21    not subject to judicial review. In the APA, context, limitations on judicial review are construed

22    narrowly. *Allen v. Milas*, 896 F.3d 1094, 1103 (9th Cir. 2018); *ANA Int'l, Inc. v. Way*, 393 F.3d

23    886, 891 (9th Cir. 2004). Plaintiffs' claims that the Archives facility is exempt from sale under

24    Section 3 of FASTA (Count I) and that defendants failed to comply with Section 11 of FASTA

25    (Counts II and III) do not fall within Section 18's bar on judicial review.

26

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

14

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

2.      While "[a]ctions of the Board" under FASTA are not subject to judicial review, this Court has the power to enjoin the Board from taking actions to further a property sale that is in violation of FASTA.

**B.      Plaintiffs Have Standing**

3.      Plaintiffs have standing to bring this lawsuit. Plaintiffs have met each element of Article III standing: (1) injury in fact, (2) causation, and (3) redressability. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), *as revised* (May 24, 2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Plaintiffs will be injured by the sale of the Archives facility and consequent transfer of its records to facilities outside the Pacific Northwest, which will deprive them of meaningful access to those records. The injury is redressable because there is no evidence the transfer will occur absent a sale of the property, and this Court has the power to review and prevent a sale that violates FASTA.

4.      Plaintiffs are also within the zone of interests of FASTA. In the APA context, the zone-of-interests test is "not especially demanding." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 130 (2014); *E. Bay Sanctuary Covenant v. Trump*, 950 F.3d 1242, 1270 (9th Cir. 2020). Here, Plaintiffs' interests are neither "marginally related to" nor "inconsistent with" FASTA's purposes, *Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 567 U.S. 209, 225 (2012), and this lawsuit seeking to enforce FASTA's requirements furthers rather than frustrates FASTA's objectives. *Clarke v. Sec. Indus. Ass'n*, 479 U.S. 388, 397 (1987).

5.      Defendants do not challenge any State Plaintiffs' standing to protect its sovereign, proprietary, or *parens patriae* interests, nor do Defendants challenge any Plaintiffs' organizational standing.

**C.      Plaintiffs Meet the Standard for Preliminary Injunctive Relief**

6.      A party seeking a preliminary injunction must show that: (1) it is likely to succeed on the merits; (2) it will likely suffer irreparable harm in the absence of an injunction; (3) the

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

15

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   balance of equities tips in its favor, and (4) an injunction is in the public interest. *See* Fed. R.

2   Civ. P. 65(b)(1); *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Plaintiffs have

3   established each of these elements.

4           7.      "'Crafting a preliminary injunction is an exercise of discretion and judgment,

5   often dependent as much on the equities of a given case as the substance of the legal issues it

6   presents.'" *California v. Azar*, 911 F.3d 558, 583 (9th Cir. 2018) (quoting *Trump v. Int'l Refugee*

7   *Assistance Project*, 137 S. Ct. 2080, 2087 (2017)). "The purpose of such interim equitable relief

8   is not to conclusively determine the rights of the parties but to balance the equities as the

9   litigation moves forward." *Id.* The Court will enjoin Defendants from taking any further steps to

10  effectuate or facilitate the sale of the Archives facility under FASTA, to preserve the status quo

11  *pendente lite*.

12          **1.**      **Plaintiffs have shown a likelihood of success on the merits of Count I**

13          8.      "Properties used in connection with Federal programs for agricultural,

14  recreational, or conservation purposes, including research in connection with the programs," are

15  exempt from sale under FASTA Section 3(5)(B)(viii). The Archives facility falls within this

16  exemption and cannot lawfully be sold under FASTA.

17          9.      "'Canons of statutory construction help give meaning to a statute's words. We

18  begin with the language of the statute.'" *City of Los Angeles v. Barr*, 941 F.3d 931, 940 (9th Cir.

19  2019) (quoting *Wilderness Soc'y v. U.S. Fish & Wildlife Serv.,* 353 F.3d 1051, 1060 (9th Cir.

20  2003) *amended on reh'g en banc in part sub nom. Wilderness Soc'y v. U.S. Fish & Wildlife*

21  *Serv.*, 360 F.3d 1374 (9th Cir. 2004)). FASTA does not define any of the terms used in the

22  exemption, including "conservation," "agricultural," or "recreational." *See generally* FASTA

23  § 3. As such, these terms are to be given "'their ordinary, contemporary, common meaning,'"

24  and the Court "'may consult dictionary definitions.'" *City of Los Angeles*, 941 F.3d at 940

25  (citation omitted).

26

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

16

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

10.     Webster's defines "conservation" as, *inter alia*, "a careful preservation and protection of something"; "the things that are done to keep works of art or things of historical importance in good condition"; "planned management of a natural resource to prevent exploitation, destruction, or neglect." *Conservation*, Merriam-Webster.com, https://tinyurl.com /yy536v3w (last visited Feb. 9, 2021). Webster's defines "recreation" as, *inter alia*, "a means of refreshment or diversion." *Recreation*, Merriam-Webster.com, https://tinyurl.com/yy4p8jzp (last visited Feb. 9, 2021).

11.     The phrase "in connection with" is construed broadly. The Supreme Court "has often recognized that 'in connection with' can bear a 'broad interpretation.'" *Mont v. United States*, 139 S. Ct. 1826, 1832 (2019) (quoting *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006)); *see also In re Plant Insulation Co*., 734 F.3d 900, 910 (9th Cir. 2013) ("in connection with" is synonymous with "relating to"); *Cal. Tow Truck Ass'n v. City & County of San Francisco*, 807 F.3d 1008, 1022 (9th Cir. 2015) ("relating to" has a "broad" meaning). As the Supreme Court explained, "[i]f Congress intended a narrower interpretation [of the statute], it could easily have used narrower language," and courts "cannot override Congress' choice to employ the more capacious phrase 'in connection with.'" *Mont,* 139 S. Ct. at 1832–33.

12.     Plaintiffs have presented unrebutted evidence that the Archives facility is used "in connection with" the following "Federal programs for agricultural, recreational, or conservation purposes," any of which is sufficient on its own to exempt the Archives facility from sale under FASTA:

- Programs for resource management and historical use of NPS lands;

- Programs for the development of visitor education materials, exhibits, and trailhead and trail signage for U.S. Forest Service projects at national parks and trails;

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

17

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

- Programs of the Wing Luke Museum, a Smithsonian affiliate and NPS Affiliated Area;

- Programs funded by the NPS for the management of San Juan Island National Park; to document and conserve historic places important to Latino and African American communities; and to identify Alaska Native historic sites eligible for selection under the Alaska Native Claims Settlement Act of 1971, which transferred land titles to Alaska Native corporations;

- Ecological conservation programs of the U.S. Department of Fish and Wildlife, U.S. Army Corps of Engineers, Bureau of Land Management, and NOAA;

- Programs carried out by Tribes pursuant to the ISDEAA, under which tribal officials are "performing a federal function,"[5] including programs for ecological conservation, climate change impact assessment, natural resource management, archaeological and cultural conservation, historic conservation, conservation of federal lands in Alaska, and environmental cleanup;

- Programs related to the Native American Graves Protection and Repatriation Act;

- Programs related to tribal land and water rights, including but not limited to treaty rights in the Klamath River Basin[6];

- The NPS's National Register of Historic Places program, Historic Tax Credit program, Tribal Preservation Program, Historic American Buildings Surveys program, Historic American Engineering Records program, and Federal Certified Local Government program; and

---

[5] *FGS Constructors, Inc. v. Carlow*, 64 F.3d 1230, 1234 (8th Cir. 1995), cited approvingly in *Demontiney v. U.S. ex rel. Dep't of Interior, Bureau of Indian Affairs*, 255 F.3d 801, 807-08 (9th Cir. 2001).

[6] *See Baley v. United States*, 942 F.3d 1312, 1316 (Fed. Cir. 2019), *cert. denied*, 141 S. Ct. 133 (2020).

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

18

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

- NARA's "Preservation Programs," including the work of its "Conservation Division" and "Conservation Laboratory" to conserve documents, including documents housed at the Seattle Archives facility.

13. Although the complete administrative record is not before the Court at this stage, the Court may consider the unrebutted evidence of the use of the Archives facility in connection with the programs listed above because it is relevant to Defendants' failure to take required actions and the scope of Defendants' authority. *Friends of the Clearwater v. Dombeck*, 222 F.3d 552, 560 (9th Cir. 2000); *Lands Council v. Powell*, 395 F.3d 1019, 1030 (9th Cir. 2005).

14. Defendants lack any discretion to sell a property under FASTA that is exempt from that statute under its plain terms. *See King v. Burwell*, 576 U.S. 473, 486 (2015) (Court must enforce statute's plain terms).

15. Accordingly, Defendants' actions to facilitate and effectuate the sale are not within their authority under FASTA. Plaintiffs are likely to succeed on the merits of Count I of their Complaint. For substantially the same reasons, Defendants' motion to dismiss Count I is denied.

**2.      Plaintiffs have shown a likelihood of success on the merits of Counts II and III**

16. Counts II and III of Plaintiffs' Complaint allege that the impending sale of the Archives is unlawful because OMB and GSA failed to fulfill the procedural requirements of FASTA Section 11.

17. Under Section 706(1) of the Administrative Procedure Act (APA), courts "shall compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). "A court can compel agency action under this section only if there is 'a specific, unequivocal command' placed on the agency to take a 'discrete agency action,' and the agency has failed to take that action." *Vietnam Veterans of Am. v. C.I.A.*, 811 F.3d 1068, 1075 (9th Cir. 2016) (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004)). The required agency

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

19

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1   action must be "so clearly set forth that it could traditionally have been enforced through a writ

2   of mandamus." *Id.*

3       18.   Section 11(b)–(d) of FASTA specifically and unequivocally requires OMB and

4   GSA to take a number of discrete, nondiscretionary actions. Section 11 repeatedly uses

5   mandatory language in setting forth these duties. *See Nat'l Ass'n of Home Builders v. Defs. of*

6   *Wildlife*, 551 U.S. 644, 661 (2007) (Congress' "use of a mandatory 'shall'" imposes

7   "discretionless obligations") (internal citation omitted). Specifically, Section 11 requires that:

8           a.   The Director of OMB "shall," within a specified 60-day period, in

9               consultation with the GSA Administrator, "develop consistent standards and

10              criteria against which [federal agency property sale recommendations] will be

11              reviewed," § 11(b)(1);

12          b.   The Director of OMB and the GSA Administrator "shall jointly develop

13              recommendations to the [PBRB] based on [OMB's] standards and criteria,"

14              § 11(b)(2);

15          c.   The Director of OMB "shall," within the same specified 60-day period,

16              and in consultation with the GSA Administrator, "submit to the [PBRB] the

17              recommendations developed," § 11(b)(1), (2);

18          d.   The Director of OMB "shall submit the standards, criteria, and

19              recommendations . . . to the [PBRB] with all supporting information, data,

20              analyses, and documentation," § 11(d)(1); and

21          e.   The standards, criteria, and recommendations developed by the Director

22              of OMB "shall be published in the Federal Register and transmitted to the

23              [congressional] committees listed in section 5(c) and to the Comptroller General

24              of the United States." § 11(d)(2).

25      19.   OMB failed to take any of these mandatory procedural steps. OMB, in

26   consultation with GSA, never reviewed the agency recommendations and never developed

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

20

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

consistent standards and criteria against which agency recommendations were to be reviewed. *Id.* § 11(b)(1)(A)–(B). Nor did OMB and GSA ever jointly develop recommendations to the PBRB. *Id.* § 11(b)(2). Consequently, OMB never provided the nonexistent standards, criteria, and recommendations to the PBRB, never published them in the Federal Register, never transmitted them to the specified congressional committees or the Comptroller General, and never provided the PBRB with all supporting information, data, analyses, and documentation. *Id.* § 11(d).

20.    OMB and GSA's failure to fulfill their most basic duties under FASTA are "egregious enough to warrant mandamus."[7] *Telecomms. Research & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984) (*TRAC*); *see Agua Caliente Tribe of Cupeno Indians of Pala Reservation v. Sweeney*, 932 F.3d 1207, 1216 n.7 (9th Cir. 2019) (the *TRAC* factors apply to a request for mandamus under the APA). While the standard is "hardly ironclad," courts addressing claims of unlawfully withheld or unreasonably delayed agency action consider the following factors: (1) agency decision-making timelines must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed, that statutory scheme may supply the content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on other agency activities; (5) the court should consider the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that the agency action is unreasonably delayed." *TRAC*, 750 F.2d at 80.

21.    Here, the *TRAC* factors demonstrate that OMB and the GSA's failures likely warrant relief under APA Section 706(1). <u>First</u>, as to *TRAC* factors 1 and 2, Congress provided

---

[7] At this stage, the Court need only preliminarily enjoin the sale of the Archives Facility to preserve the status quo pending a final judgment. A writ of mandamus need not issue now.

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

21

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

a definite "timetable" for the agencies to act: the standards, criteria, and recommendations must be transmitted to the PBRB within 60 days following the agency-recommendation deadline. FASTA § 11(b)(1). This timetable makes sense, because FASTA is designed to "expedite[]" federal property sales, § 2(8), and contemplates that the PBRB will have the benefit of OMB's standards, criteria, and recommendations in identifying properties for sale, which it must quickly do within 180 days after a quorum of Board members is appointed, § 12(b)(1). *See* § 12(b)(3) ("In identifying properties pursuant to paragraph (1), the [PBRB] shall consider the factors" incorporated into OMB's standards and criteria.). Second, as to *TRAC* factors 3 and 5, the agencies' failure to fulfill their duties caused the PBRB to recommend selling the Archives facility without the benefit of the Congressionally-mandated standards, criteria, recommendations, and "supporting information, data, analyses, and documentation." The resulting harms are not purely "economic," but implicate profound human interests such as tribal membership and treaty rights, cultural heritage, and regional history. Third, as to *TRAC* factor 4, requiring Defendants to fulfill FASTA's mandatory procedural requirements before proceeding with the sale of the Archives is not unduly prejudicial.

22.     Courts "shall hold unlawful and set aside agency action" that is "without observance of procedure required by law," 5 U.S.C. § 706(2)(D), "in excess of statutory . . . authority," *id.* § 706(2)(C), or "otherwise not in accordance with law," *id.* § 706(2)(A).

23.     OMB and GSA failed to follow FASTA's basic procedural requirements, skipping Section 11(b)–(d)'s mandatory steps. As such, Plaintiffs are likely to succeed on the merits of their claim that Defendants' actions under FASTA are procedurally deficient, *ultra vires*, and contrary to law.

24.     Defendants were not authorized to sell the Archives facility under FASTA absent compliance with the statute's procedural prerequisites. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Forest Serv.*, 349 F.3d 1157 (9th Cir. 2003) (U.S. Forest Service failed to comply with

PLAINTIFFS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AND PROPOSED FORM OF INJUNCTIVE RELIEF NO. 2:21-cv-00002-JCC

22

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

procedures required by National Environmental Policy Act's (NEPA) procedural requirements); *Campanale & Sons, Inc. v. Evans*, 311 F.3d 109 (1st Cir. 2002) (Secretary of Commerce failed to comply with Atlantic Coastal Fisheries Cooperative Management Act's "explicit procedural requirement to consult with the appropriate councils before implementing" fishing regulations); *N.Y. Pub. Interest Research Grp., Inc. v. Johnson*, 427 F.3d 172, 182 (2d Cir. 2005) (EPA failed to comply with Clean Air Act's requirement that operating permits for non-compliant air pollution sources must include a compliance schedule).

25.    In addition, OMB and GSA's procedural failures were not "harmless." *See* 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error" in APA review). The Ninth Circuit has stressed that courts must exercise "great caution" in applying the harmless error rule: a procedural failure is "harmless only where the agency's mistake clearly had no bearing on the procedure used or the substance of the decision reached." *Cal. Wilderness Coal. v. U.S. Dep't of Energy*, 631 F.3d 1072, 1090 (9th Cir. 2011). "The reason is apparent: Harmless error is more readily abused [in the administrative context] than in the civil or criminal context." *Id.* To avoid "gutting" Congress' procedural safeguards, "harmless error analysis in administrative rulemaking must therefore focus on the process as well as the result." *Id.*; *see also, e.g.*, *Oglala Sioux Tribe v. U.S. Nuclear Regulatory Comm'n*, 896 F.3d 520, 534 (D.C. Cir. 2018) (rejecting harmless error defense to claim that agency violated procedural requirements).

26.    Here, OMB and GSA's failure to comply with Section 11's procedural requirements is inherently harmful. The publication and transmittal requirements (FASTA § 11(d)(2)) ensure transparency in the standards for evaluating properties recommended for expedited sale, while the requirement to provide "standards, criteria, and recommendations" and the underlying "information, data, analyses, and documentation" (FASTA § 11(d)(1)) is meant to guide the PBRB and provide it with relevant factual information on which to base its recommendations. *See id.* § 12(b)(3) ("In identifying properties pursuant to paragraph (1), the [PBRB] shall consider the factors" incorporated into OMB's standards and criteria.); H.R. Rep.

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

23

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

No. 114-578, pt. 1, at 13 (2016) (OMB's provision of property data to the PBRB under Section 11 is "necessary" because "this data is critical to ensuring proper recommendations are developed"). Indeed, similar to NEPA, Section 11 "imposes only procedural requirements," which "ensur[e] that the agency, in reaching its decision, will have available, and will carefully consider, detailed information" that bears on its decision-making. *Winter*, 555 U.S. at 23. It also ensures that OMB has an informed, factual basis on which to "conduct a review" of the PBRB's recommendation. *See* FASTA § 13(a). OMB and GSA's violations of Section 11 cannot be "forgiven merely because they are procedural": the procedures are the point. *Oglala Sioux Tribe*, 896 F.3d at 534.

27.     Moreover, the PBRB, itself, acknowledged in its High Value Assets Report that it "encountered significant challenges as it developed the [high value asset] disposal recommendations" and that it "faced, and continues to face, challenges in gathering the data needed to support decision making for complex real estate transactions." Dkt. #16-1 at 35 (Fraas Ex. 5). It further stated that "[u]nfortunately, the PBRB did not benefit from the Section 11 FASTA directive that OMB, in consultation with GSA, develop standards and criteria to use in evaluating agency submissions and making recommendations to the PBRB" and that "[t]o the best of the PBRB's knowledge, the standards and criteria were never developed." *Id.* at 33. It admitted that "defined standards, criteria, and recommendations would have significantly reduced the PBRB's challenges." *Id.* at 35.

28.     Accordingly, because it is undisputed that OMB failed to satisfy its mandatory Section 11 obligations and because it is also undisputed that OMB's failures resulted in additional challenges for the PBRB in the FASTA process,  Plaintiffs are likely to succeed on the merits of Counts II and III of their Complaint. For substantially the same reasons, Defendants' motion to dismiss Counts II and III is denied.

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

24

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

**3.    Plaintiffs have shown a likelihood of irreparable harm absent injunctive relief**

29.    Irreparable harm is harm "for which there is no adequate legal remedy, such as an award of damages." *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). The harm analysis "focuses on irreparability, irrespective of the magnitude of the injury." *Azar*, 911 F.3d at 581 (internal quotation marks omitted).

30.    The sale and closure of the Archives facility under FASTA and the subsequent removal of NARA's archival records from the Pacific Northwest is likely to cause irreparable harm to Plaintiffs and the regional public at large.

31.    Tribal governments, Alaska Native Corporations, and tribal communities will be irreparably harmed if the Seattle Archives facility is sold because tribes and their members are uniquely dependent on the facility's records for core tribal functions and cultural preservation. The tribal governments and communities have, for instance, regularly use the Archives facility to vindicate tribal land rights, protect treaty hunting and fishing rights, implement historic preservation efforts, investigate eligibility for tribal membership, seek federal recognition, defend tribal sovereignty, conduct cultural anthropology work, and protect subsistence rights and conservation interests.

32.    For many Plaintiffs and their members, travel outside of the Pacific Northwest to access the records is not possible. Where travel is possible, financial harm—including travel costs—is irreparable where, as here, sovereign immunity prevents recovery from the federal government. *See Azar*, 911 F.3d at 581; *Idaho v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015).

33.    Plaintiffs Washington and Oregon also risk irreparable harm if the Seattle facility is closed and archival records are removed from the Pacific Northwest. Irreparable harm to state agencies' organizational missions satisfies the *Winter* test and establishes standing. *See E. Bay*

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

25

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    *Sanctuary*, 950 F.3d at 1265–66, 1280; *League of Women Voters of U.S. v. Newby*, 838 F.3d 1,

2    8 (D.C. Cir. 2016); *Valle del Sol Inc. v. Whiting*, 732 F.3d 1006, 1029 (9th Cir. 2013).

3          34.     The sale and closure of the Archives facility also harms the proprietary interests

4    of Washington and Oregon's public universities, which rely upon the Archives for recruitment

5    and scholarship, as well as state agencies that regularly rely on the Archives to carry out their

6    functions. *See Regents of Univ. of Cal. v. Am. Broad. Cos., Inc.*, 747 F.2d 511, 520 (9th Cir.

7    1984) (actionable harms include "impairment of [the university's] ongoing recruitment programs

8    [and] the dissipation of alumni and community goodwill and support garnered over the

9    years"); *see also Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d

10   597, 603 (9th Cir. 1991) ("[I]ntangible injuries, such as damage to ongoing recruitment efforts

11   and goodwill, qualify as irreparable harm.").

12         35.     Plaintiff historical societies, museums, and community organizations also have

13   standing and will suffer irreparable harm to their missions if the Archives records are moved out

14   of the Pacific Northwest. *See E. Bay Sanctuary*, 950 F.3d at 1265; *Newby*, 838 F.3d at 8. For

15   example, members of the American Historical Association, the world's largest professional

16   historian organization, regularly use the facility for their historical work. Members of community

17   organizations such as the Chinese American Citizens Alliance and OCA – Asian Pacific

18   Advocates, who rely on the Archives to learn about their own histories and teach about the tragic

19   errors of the past, will also be irreparably harmed.

20         36.     Given the significant harm that would occur if the Archives facility is sold under

21   FASTA, a preliminary injunction is necessary to maintain the status quo to ensure the sale does

22   not proceed before the claims in this matter are resolved.

23         37.     Moreover, Defendants' procedural failings alone constitute irreparable harm and

24   further support Plaintiffs' request for a preliminary injunction. *See Azar*, 911 F.3d at 581

25   (affirming finding of "irreparable procedural harm" and "reaffirming that the harm flowing from

26   a procedural violation can be irreparable"); *Save Strawberry Canyon v. Dep't of Energy*, 613 F.

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

26

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  Supp. 2d 1177, 1189–90 (N.D. Cal. 2009) (irreparable harm satisfied by claimed procedural

2  violation).

3      **4.**        **The equities and public interest weigh strongly in Plaintiffs' favor**

4      38.        The equities and the public interest also strongly favor injunctive relief. Because

5  the government is a party, these inquiries merge. *Drake's Bay Oyster Co. v. Jewell*, 747 F.3d

6  1073, 1092 (9th Cir. 2014).

7      39.        As set forth above, Plaintiffs have established that they are likely to succeed in

8  their claims that sale of the Archives facility violates FASTA. Accordingly, it is in the public

9  interest to "'curtail unlawful executive action.'" *Hawai'i v. Trump*, 859 F.3d 741, 784 (9th Cir.

10  2017) (citation omitted), *vacated on other grounds and remanded by Trump v. Hawai'i*, 138 S.

11  Ct. 377 (2017); *see Planned Parenthood of Great N.W. & Hawaiian Islands, Inc. v. Azar*,

12  352 F. Supp. 3d 1057, 1066 (W.D. Wash. 2018) ("The Ninth Circuit has recognized that 'the

13  public interest favors applying federal law correctly.'" (citation omitted)). That is because

14  "[t]here is generally no public interest in the perpetuation of unlawful agency action. To the

15  contrary, there is a substantial public interest in having governmental agencies abide by the

16  federal laws that govern their existence and operations." *Newby*, 838 F.3d at 12 (citations and

17  internal quotation marks omitted). Thus, the public interest weighs in favor of having a likely

18  unlawful process curtailed.

19      40.        The equities also weigh particularly strongly in Plaintiffs' favor due to the federal

20  government's failure to consult with tribal leaders, its failure to hold any public hearings or

21  meetings in the Pacific Northwest, and its broken promise to digitize Alaska records that were

22  moved to Seattle when NARA's Anchorage facility closed in 2014.

23      **III.**      **PLAINTIFFS' PROPOSED INJUNCTIVE RELIEF**

24      1.        This matter came before the Court on Plaintiffs' Motion for Preliminary

25  Injunction. The Court has considered Plaintiffs' Motion for Preliminary Injunction and the

26  supporting declarations and exhibits thereto; Defendants' Response and the supporting

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

27

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1  declarations and exhibits thereto; Plaintiffs' Reply and the supporting declarations and exhibits
2  thereto; the briefs of amici curiae; the entire record herein; and the applicable law, and is fully
3  apprised of the matter.

4  2.    The Court finds that Plaintiffs have established a likelihood of success on the
5  merits of their claims that the Federal Archives and Records Center located at 6125 Sand Point
6  Way NE, Seattle, Washington, 98115 (Archives facility), is exempt from being sold under the
7  Federal Assets Sale and Transfer Act, Pub. L. 114-287, as amended (FASTA); and that
8  Defendants Office of Management and Budget and General Services Administration failed to
9  follow the procedural requirements of FASTA Section 11; and that Defendants' actions to
10  facilitate and effectuate the sale of the Archives facility are therefore in violation of the
11  Administrative Procedure Act. The Court further finds that Plaintiffs have established a
12  likelihood that they will be irreparably harmed if the Archives facility is sold and the records it
13  holds are no longer available to members of the public in the Pacific Northwest, and that the
14  balance of equities and the public interest weigh in favor of a preliminary injunction to maintain
15  the status quo pending final resolution of Plaintiffs' claims.

16  3.    The Court therefore ORDERS that Plaintiffs' Motion for Preliminary Injunction
17  is GRANTED. Defendants and all their respective officers, agents, servants, employees and
18  attorneys, and any persons in active concert or participation with them, are hereby ENJOINED
19  from selling the Archives facility under FASTA, and from taking any actions to facilitate or
20  effectuate a sale of the Archives facility under FASTA, until a final determination on the merits
21  is issued by this Court. Defendants shall take any and all steps necessary to ensure compliance
22  with the terms of this Order.

23  4.    IT IS FURTHER ORDERED that Defendants shall notify their officers, agents,
24  representatives, servants, employees, attorneys, and all persons in active concert or participation
25  with them of the requirements of this Order.

26

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

28

1    5.    The Court deems that no security bond is required under Federal Rule of Civil

2  Procedure 65(c).

3    6.    This preliminary injunction shall remain in effect until a final judgment is entered

4  or until further order of the Court.

5    DATED this 10th day of February, 2021.

6    ROBERT W. FERGUSON
    Washington State Attorney General
7

8    */s/ Lauryn K. Fraas*
    LAURYN K. FRAAS, WSBA #53238
9    NATHAN BAYS, WSBA #43025
    KRISTIN BENESKI, WSBA #45478
    SPENCER COATES, WSBA #49683
10   Assistant Attorneys General
    Lauryn.Fraas@atg.wa.gov
11   Nathan.Bays@atg.wa.gov
    Kristin.Beneski@atg.wa.gov
12   Spencer.Coates@atg.wa.gov
    *Attorneys for Plaintiff State of Washington*
13

14   ALEUTIAN PRIBILOF ISLANDS ASSOCIATION,
    INC.
15

16   */s/ Geoffrey D. Strommer*
    GEOFFREY D. STROMMER, WSBA #43308
17   Hobbs Straus Dean & Walker, LLP
    215 SW Washington Street, Suite 200
18   Portland, OR 97214
    503.242.1745
19   GStrommer@hobbsstraus.com
    *Attorney for Plaintiff Aleutian Pribilof Islands*
20   *Association Inc.*

21

22

23

24

25

26

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

29

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

AMERICAN HISTORICAL ASSOCIATION

2

*/s/ Harry H. Schneider, Jr.*
HARRY H. SCHNEIDER, JR., WSBA #9404

3

Perkins Coie LLP
1201 Third Avenue, Suite 4900

4

Seattle, WA 98101-3099
206.359.8000

5

hschneider@perkinscoie.com

6

*/s/ Alison M. Dreizen*
ALISON M. DREIZEN, *admitted pro hac vice*

7

Carter Ledyard & Milburn LLP
Two Wall Street

8

New York, NY 10005
212.238.8855

9

dreizen@clm.com
*Attorneys for Plaintiff American Historical*

10

*Association*

11

ASSOCIATION OF KING COUNTY HISTORICAL

12

ORGANIZATIONS, HISTORIC SEATTLE,
HISTORYLINK, MUSEUM OF HISTORY AND

13

INDUSTRY, and WASHINGTON TRUST FOR
HISTORIC PRESERVATION

14

*/s/ Paul J. Lawrence*

15

PAUL J. LAWRENCE, WSBA #13557
ALANNA E. PETERSON, WSBA #46502

16

Pacific Law Group
1191 2nd Avenue, Suite 2000

17

Seattle, WA 98101-3404
206.245.1700

18

alanna.peterson@pacificalawgroup.com
paul.lawrence@pacificalawgroup.com

19

*Attorneys for Plaintiffs Association of King County*
*Historical Organizations, Historic Seattle,*

20

*HistoryLink, Museum of History and Industry, and*
*Washington Trust For Historic Preservation*

21

22

23

24

25

26

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

30

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

2

CENTRAL COUNCIL OF TLINGIT & HAIDA
INDIAN TRIBES OF ALASKA, DOYON, LTD.,
and TANANA CHIEFS CONFERENCE

3

4

5

6

7

8

9

*/s/ Richard D. Monkman*
LLOYD B. MILLER, *admitted pro hac vice*
RICHARD D. MONKMAN, WSBA #35481
Sonosky, Chambers, Sachse, Miller & Monkman,
LLP
725 East Fireweed Lane, Suite 420
Anchorage, AK 99503
907.258.6377
lloyd@sonosky.net
rdm@sonosky.net
*Attorneys for Plaintiffs Doyon, Ltd., Tanana Chiefs
Conference, and Central Council of Tlingit & Haida
Indian Tribes of Alaska*

10

11

CHINESE AMERICAN CITIZENS ALLIANCE

12

13

14

15

16

17

*/s/ Darin Sands*
DARIN SANDS, WSBA #35865
HEIDI B. BRADLEY, WSBA #35759
Bradley Bernstein Sands
P.O. Box 4120, PMB 62056
Portland, OR 97208-4120
503.734.2480
dsands@bradleybernsteinllp.com
hbradley@bradleybernsteinllp.com
*Attorneys for Plaintiff Chinese American Citizens
Alliance*

18

19

CONFEDERATED TRIBES AND BANDS OF THE
YAKAMA NATION

20

21

22

23

24

25

*/s/ Ethan Jones*
ETHAN JONES, WSBA #46911
ANTHONY ARONICA, WSBA #54725
Yakama Nation Office of Legal Counsel
P.O. Box 151, 401 Fort Road
Toppenish, WA 98948
509.865.5121
ethan@yakamanation-olc.org
anthony@yakamanation-olc.org
*Attorneys for Plaintiff Confederated Tribes and Bands
of the Yakama Nation*

26

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

31

THE CONFEDERATED TRIBES OF THE
CHEHALIS RESERVATION

*/s/ Harold Chesnin*
HAROLD CHESNIN, WSBA #398
Office of Tribal Attorney
Confederated Tribes of the Chehalis Reservation
420 Howanut Road
Oakville, WA 98568
360.529.7465
hchesnin@chehalistribe.org
*Attorney for Plaintiff The Confederated Tribes of the*
*Chehalis Reservation*


CONFEDERATED TRIBES OF THE COLVILLE
RESERVATION

*/s/ Marty M. Raap*
MARTY M. RAAP, WSBA #27962,
*application for admission forthcoming*
Office of the Reservation Attorney
Confederated Tribes of the Colville Reservation
P.O. Box 150
Nespelem, WA 99155
509.634.2533
Marty.Raap.ORA@colvilletribes.com
*Attorney for Plaintiff Confederated Tribes of the*
*Colville Reservation*


CONFEDERATED TRIBES OF COOS, LOWER
UMPQUA AND SIUSLAW INDIANS, and
SPOKANE TRIBE OF INDIANS

*/s/ Richard K. Eichstaedt*
RICHARD K. EICHSTAEDT, WSBA #36487
SCOTT WHEAT, WSBA #25565
Wheat Law Offices
P.O. Box 9168
Spokane, WA 99209
509.209.2604
rick@wheatlawoffices.com
scott@wheatlawoffices.com
*Attorneys for Plaintiffs Confederated Tribes of Coos,*
*Lower Umpqua and Siuslaw Indians, and Spokane*
*Tribe of Indians*

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

32

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

2

CONFEDERATED TRIBES OF THE GRAND
RONDE COMMUNITY OF OREGON

3

*/s/ Nathan Alexander*
NATHAN ALEXANDER, WSBA #37040
Dorsey & Whitney, LLP

4

701 Fifth Avenue, Suite 6100
Seattle, WA 98104-7043

5

206.903.8791
alexander.nathan@dorsey.com

6

*Attorney for Plaintiff Confederated Tribes of The*
*Grand Ronde Community of Oregon*

7

8

9

CONFEDERATED TRIBES OF SILETZ INDIANS,
HOH INDIAN TRIBE, and SAMISH INDIAN
NATION

10

*/s/ Craig J. Dorsay*
CRAIG J. DORSAY, WSBA #9245

11

LEA ANN EASTON, WSBA #38685
KATHLEEN GARGAN, WSBA #56452

12

Dorsay & Easton LLP
1737 Northeast Alberta Street, Suite 208

13

Portland, OR 97211
503.790.9060

14

craig@dorsayindianlaw.com
leaston@dorsayindianlaw.com

15

katie@dorsayindianlaw.com
*Attorneys for Plaintiffs Hoh Indian Tribe, Samish*

16

*Indian Nation, and Confederated Tribes of Siletz*
*Indians*

17

18

19

CONFEDERATED TRIBES OF THE UMATILLA
INDIAN RESERVATION

20

*/s/ Naomi Stacy*
NAOMI STACY, WSBA #29434

21

Lead Attorney, Office of Legal Counsel

22

46411 Timíne Way
Pendleton, OR 97801

23

541.429.7400

24

naomistacy@ctuir.org
*Attorney for Plaintiff the Confederated Tribes of the*

25

*Umatilla Indian Reservation*

26

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

33

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

2

THE CONFEDERATED TRIBES OF THE WARM
SPRINGS RESERVATION OF OREGON

3

4

5

6

7

*/s/ Tyler J. Moore*
TYLER J. MOORE, WSBA #39598
Karnopp Petersen, LLP
360 SW Bond Street, Suite 400
Bend, Oregon 97702
541.382.3011
tjm@karnopp.com
*Attorneys for Plaintiff The Confederated Tribes of the
Warm Springs Reservation of Oregon*

8

9

COW CREEK BAND OF UMPQUA TRIBE OF
INDIANS

10

11

12

13

14

15

16

*/s/ Gabriel S. Galanda*
GABRIEL S. GALANDA, WSBA #30331
ANTHONY S. BROADMAN, WSBA #39508
RYAN D. DREVESKRACHT, WSBA #42593
Galanda Broadman PLLC
P.O. Box 15416
8606 35th Avenue NE, Suite L1
Seattle, WA 98115
206.557.7509
gabe@galandabroadman.com
anthony@galandabroadman.com
ryan@galandabroadman.com
*Attorneys for Plaintiff Cow Creek Band of Umpqua
Tribe of Indians*

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

34

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

DUWAMISH TRIBE

*/s/ Bart J. Freedman*
BART J FREEDMAN, WSBA #14187
BENJAMIN A. MAYER, WSBA #45700
ENDRE M SZALAY, WSBA #53898
NATALIE J. REID, WSBA #55745
ADAM N. TABOR, WSBA #50912
THEODORE J. ANGELIS, WSBA #30300
K&L Gates LLP
925 Fourth Avenue, Suite 2900
Seattle, WA 98104
206.370.7580
bart.freedman@klgates.com ben.mayer@klgates.com
endre.szalay@klgates.com
natalie.reid@klgates.com
adam.tabor@klgates.com
theo.angelis@klgates.com
*Attorneys for the Duwamish Tribe*


JAMESTOWN S'KLALLAM TRIBE

*/s/ Lauren P. Rasmussen*
LAUREN P. RASMUSSEN, WSBA #33256
Law Offices of Lauren P. Rasmussen, PLLC
1904 Third Avenue, Suite 1030
Seattle, WA 98101-1170
206.623.0900
lauren@rasmussen-law.com
*Attorney for Plaintiff Jamestown S'Klallam Tribe*
KALISPEL TRIBE OF INDIANS

*/s/ Lorraine A. Parlange*
LORRAINE A. PARLANGE, WSBA #25139
Senior Tribal Attorney
934 Garfield Road
Airway Heights, WA 99001
509.789.7603
lparlange@kalispeltribe.com
*Attorney for Plaintiff Kalispel Tribe of Indians*


THE KLAMATH TRIBES

*/s/ Edmund Clay Goodman*
EDMUND CLAY GOODMAN, WSBA #37347
Hobbs Straus Dean & Walker, LLP
215 SW Washington Street, Suite 200
Portland, OR 97214
503.242.1745

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

35

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    egoodman@hobbsstraus.com
     *Attorney for Plaintiff The Klamath Tribes*

2

3    METLAKATLA INDIAN COMMUNITY

4
     */s/ Geoffrey D. Strommer*
5    GEOFFREY D. STROMMER, WSBA #43308
     Hobbs Straus Dean & Walker, LLP
6    215 SW Washington Street, Suite 200
     Portland, OR 97214
7    503.242.1745
     GStrommer@hobbsstraus.com
8    *Attorney for Plaintiff Metlakatla Indian Community*

9

10   MUCKLESHOOT INDIAN TRIBE

11   */s/ Mary M. Neil*
     MARY M. NEIL, WSBA #34348
12   ROBERT L. OTSEA, JR., WSBA #9367
     DANIELLE BARGALA, WSBA #52718
13   39015 172nd Avenue S
     Auburn, WA 98092
14   253.939.3311
     rob@muckleshoot.nsn.us
15   mary.neil@muckleshoot.nsn.us
     danielle.bargala@muckleshoot.nsn.us
16   *Attorneys for Plaintiff Muckleshoot Indian Tribe*
     NEZ PERCE TRIBE
17
     */s/ Julie S. Kane*
18   JULIE S. KANE, WSBA #19138
     Office of Legal Counsel
19   P.O. Box 305
     Lapwai, ID 83540
20   208.843.7355
     juliek@nezperce.org
21   *Attorney for Plaintiff Nez Perce Tribe*

22

23

24

25

26

1

2

NOOKSACK INDIAN TRIBE

*/s/ Charles N. Hurt, Jr.*
CHARLES N. HURT, JR., WSBA #46217
Office of Tribal Attorney
Senior Tribal Attorney
5047 Mt. Baker Hwy, P.O. Box 63
Deming, WA 98244
360.598.4158
churt@nooksack-nsn.gov
*Attorney for Plaintiff Nooksack Indian Tribe*

3

4

5

6

7

8

NISQUALLY INDIAN TRIBE

*/s/ Heidi Petersen*
HEIDI PETERSEN, WSBA #43413,
*application for admission forthcoming*
Attorney, Nisqually Indian Tribe
4820 She-Nah-Num Drive SE
Olympia, WA 98513
360.456.5221
petersen.heidi@nisqually-nsn.gov
*Attorney for Plaintiff Nisqually Indian Tribe*

9

10

11

12

13

14

OCA ASIAN PACIFIC ADVOCATES – GREATER SEATTLE

*/s/ Bernadette Connor*
BERNADETTE CONNOR, WSBA #45844,
*application for admission forthcoming*
1800 Cooper Point Road SW, Suite 12
Olympia, WA 98502
206.552.9666
byconnor@gmail.com
*Attorney for Plaintiff OCA Asian Pacific*
*Advocates – Greater Seattle*

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

37

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

ELLEN F. ROSENBLUM
Attorney General of Oregon

2

*/s/ Carla A. Scott*

3

CARLA A. SCOTT WSBA #54725
Senior Assistant Attorney General

4

Trial Attorney
100 SW Market Street,

5

Portland, OR 97201
Tel (971) 673-1880

6

Fax (971) 673-5000
Carla.A.Scott@doj.state.or.us

7

*Attorneys for Plaintiff State of Oregon*

8

9

PORT GAMBLE S'KLALLAM TRIBE

10

*/s/ Rogina D. Beckwith*

ROGINA D. BECKWITH, WSBA #36241
Port Gamble S'Klallam Tribe Legal Department

11

31912 Little Boston Road NE

12

Kingston, WA 98346
360.297.6242

13

ginab@pgst.nsn.us
*Attorney for Plaintiff Port Gamble S'Klallam Tribe*

14

15

PUYALLUP TRIBE OF INDIANS

16

*/s/ Alec S. Wrolson*

ALEC S. WROLSON, WSBA #54076

17

FELECIA L. SHUE, WSBA #49911
LOIS Y. BOOME, WSBA #54883

18

LISA A.H. ANDERSON, WSBA #27877
3009 E. Portland Avenue

19

Tacoma, WA 98404
253.573.7877

20

alec.wrolson@puyalluptribe-nsn.gov
felecia.shue@puyalluptribe-nsn.gov

21

lois.boome@puyalluptribe-nsn.gov
lisa.anderson@puyalluptribe-nsn.gov

22

*Attorneys for Plaintiff Puyallup Tribe of Indians*

23

24

25

26

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

38

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

THE QUILEUTE TRIBE OF THE QUILEUTE
RESERVATION

/s/ Lauren J. King
LAUREN J. KING, WSBA #40939
Foster Garvey, P.C.
1111 Third Ave., Suite 3000
Seattle, WA 98101
206.447.6286
lauren.king@foster.com
Attorney for Plaintiff Quileute Tribe


QUINAULT INDIAN NATION

/s/ Karen Allston
KAREN ALLSTON, WSBA #25336
LORI BRUNER, WSBA #26652
Senior Assistant Attorneys General
Quinault Indian Nation Office of Attorney General
P.O. Box 613
Taholah, WA 98587
360.276.8211, ext. 1400
lbruner@quinault.org
kallston@quinault.org
Attorneys for Plaintiff Quinault Indian Nation


SAUK-SUIATTLE INDIAN TRIBE

/s/Jack W. Fiander
JACK W. FIANDER, WSBA #13116
General Counsel
Sauk-Suiattle Indian Tribe
5318 Chief Brown Lane
Darrington, WA 98241
360.436.0139
towtnuklaw@msn.com
Attorney for Plaintiff Sauk-Suiattle Indian Tribe

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

39

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1    CITY OF SEATTLE

2    /s/ Jeremy F. Wood
     JEREMY F. WOOD, WSBA #51803
3    Assistant City Attorney
     Seattle City Attorney's Office
4    701 Fifth Avenue, Suite 2050
     Seattle, WA 98104
5    206.684.8200
     jeremy.wood@seattle.gov
6    Attorney for Plaintiff City of Seattle

7

8    SHOALWATER BAY TRIBE

9    /s/ Geoffrey D. Strommer
     GEOFFREY D. STROMMER, WSBA #43308
10   Hobbs Straus Dean & Walker, LLP
     215 SW Washington Street, Suite 200
11   Portland, OR 97214
     503.242.1745
12   GStrommer@hobbsstraus.com
     Attorney for Plaintiff Shoalwater Bay Tribe
13

14   SKOKOMISH INDIAN TRIBE

15   /s/ Earle David Lees, III
16   EARLE DAVID LEES, III, WSBA #30017
     Director of the Skokomish Legal Department
17   Skokomish Indian Tribe
     N. 80 Tribal Center Road
18   Skokomish Nation, WA 98584
     360.877.2100
19   elees@skokomish.org
     Attorney for Plaintiff Skokomish Indian Tribe
20

21

22

23

24

25

26

PLAINTIFFS' PROPOSED FINDINGS OF          40          ATTORNEY GENERAL OF WASHINGTON
FACT AND CONCLUSIONS OF LAW                                Complex Litigation Division
AND PROPOSED FORM OF                                        800 5th Avenue, Suite 2000
INJUNCTIVE RELIEF                                            Seattle, WA 98104-3188
NO. 2:21-cv-00002-JCC                                           (206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SNOQUALMIE INDIAN TRIBE

*/s/ Rob Roy Smith*
ROB ROY SMITH, WSBA #33798
RACHEL B. SAIMONS, WSBA #46553
Kilpatrick Townsend & Stockton, LLP
1420 Fifth Avenue, Suite 3700
Seattle, WA 98101
206.467.9600
rrsmith@kilpatricktownsend.com
rsaimons@kilpatricktownsend.com
*Attorneys for Plaintiff Snoqualmie Indian Tribe*

SQUAXIN ISLAND TRIBE

*/s/ David Babcock*
DAVID BABCOCK, WSBA #31737
Attorney, Squaxin Island Tribe
3711 SE Old Olympic Hwy
Shelton, WA 98584
360.432.1771
dbabcock@squaxin.us
*Attorney for Plaintiff Squaxin Island Tribe*

SUQUAMISH TRIBE

*/s/ James Rittenhouse Bellis*
JAMES RITTENHOUSE BELLIS, WSBA #29226
Director, Office of Tribal Attorney
Suquamish Tribe
P.O. Box 498
Suquamish, WA 98392
360.394.8501
Shelton, WA 98584
360.432.1771
rbellis@suquamish.nsn.us
*Attorney for Plaintiff Suquamish Tribe*

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

41

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SWINOMISH INDIAN TRIBAL COMMUNITY

*/s/ Emily Haley*
EMILY HALEY, WSBA #38284
Office of the Tribal Attorney
11404 Moorage Way
La Conner, WA 98257
360.466.3163
ehaley@swinomish.nsn.us
*Attorney for Plaintiff Swinomish Indian Tribal*
*Community*


UPPER SKAGIT INDIAN TRIBE

*/s/ David S. Hawkins*
DAVID S. HAWKINS, WSBA #35370
General Counsel
Upper Skagit Indian Tribe
25944 Community Plaza Way
Sedro-Woolley, WA 98284
360.854.7016
dhawkins@upperskagit.com
*Attorney for Plaintiff Upper Skagit Indian Tribe*


WING LUKE MEMORIAL FOUNDATION d/b/a
WING LUKE MUSEUM

*/s/ Gloria Lung Wakayama*
GLORIA LUNG WAKAYAMA, WSBA #11892
Harris & Wakayama, PLLC
601 Union Street, Suite 2600
Seattle, WA 98101
206.621.1818
glwakayama@hmwlaw.com
*Attorney for Plaintiff Wing Luke Memorial*
*Foundation d/b/a Wing Luke Museum*

PLAINTIFFS' PROPOSED FINDINGS OF
FACT AND CONCLUSIONS OF LAW
AND PROPOSED FORM OF
INJUNCTIVE RELIEF
NO. 2:21-cv-00002-JCC

42

ATTORNEY GENERAL OF WASHINGTON
Complex Litigation Division
800 5th Avenue, Suite 2000
Seattle, WA 98104-3188
(206) 464-7744