Judge Coughenour

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

STATE OF WASHINGTON, et al.,

        Plaintiffs,

v.

ROB FAIRWEATHER, etc., et al.,

        Defendants.

CASE NO. C21-0002-JCC

**DEFENDANTS' PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON MOTION FOR PRELIMINARY INJUNCTION**

This action came on for hearing before the Court on plaintiffs' motion for a preliminary injunction on February 12, 2021. _____ appeared as counsel for plaintiffs. Brian C. Kipnis, Assistant United States Attorney, appeared as counsel for defendants. Having considered the memoranda filed by the parties for and against the motion along with the declarations and exhibits filed therewith, and having heard the arguments of their counsel, and this cause having been submitted for decision, the Court, being fully advised, makes the following findings of fact and conclusions of law:

**FINDINGS OF FACT**

1. Plaintiffs, comprised of the States of Oregon and Washington, several historical societies, and numerous Indian Tribes, have filed this action against various Federal agencies, namely, the Office of Management and Budget (OMB), the General Services Administration (GSA),

DEFENDANTS PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON MOTION FOR
PRELIMINARY INJUNCTION - 1
(Case No. C21-0002-JCC)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

the Public Buildings Reform Board (PBRB) and the National Archives and Records Administration (NARA), and named officers thereof, under the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706, challenging OMB's approval pursuant to Section 13(b) of the Federal Assets Sale and Transfer Act of 2016, Pub. L. No. 114-287, 130 Stat. 1463 (FASTA), of a PBRB recommendation to sell a facility owned by the United States, in the custody of GSA, and operated by NARA, in Seattle.  Plaintiffs assert that they will be injured by the sale of this facility because it will cause the archival records stored in the facility to be removed to distant NARA facilities and substantially impair their ability to gain direct access to the records in their native form. Thus, plaintiffs seek a preliminary injunction enjoining both the sale and all preparations for a sale of the Seattle NARA facility until their claims can be heard and adjudicated on the merits. Defendants oppose plaintiffs' motion and have cross-moved to dismiss plaintiffs' claims against them pursuant to Rules 12(b)(1) and 12(b)(6), F.R.Civ.P.  Dkt. # 36.

2. The Seattle NARA facility is located at 6125 Sand Point Way NE, Seattle, Washington.  The facility was originally constructed in 1946, as a part of the Sand Point U.S. Naval Air Station.  GSA acquired the facility in 1959.  Following an expansion in 1984, the facility is 187,752 sq. ft. in size and sits on 10 acres.  The last known major renovation of the facility most likely occurred in 1987.

3. The building is owned by the United States, in the custody of GSA.  NARA is its only tenant.  NARA has operated in the Seattle facility since 1963.  Two separate NARA programs are housed within the building.  The first is the Seattle Federal Records Center, which stores non-archival temporary Federal records for Federal agencies in several Western states and territories. NARA does not provide direct public access to these records, which take up relatively more space in the facility.  The second program operated by NARA at the Seattle facility is a branch of the National Archives, which houses records of a historical nature on a permanent basis.  It is this latter category of records that are the primary source of plaintiffs' concern in bringing this lawsuit.  The National Archives provides public access to these records online, through off-site reference requests

DEFENDANTS PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON MOTION FOR
PRELIMINARY INJUNCTION - 2
(Case No. C21-0002-JCC)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

(by e-mail, mail, and phone), and in-person at the public research room, although in-person access is temporarily disrupted by the present coronavirus pandemic.

4. The Seattle facility must meet certain exacting NARA requirements, entitled "NARA 1571," for the storage of the archival records to ensure their preservation and security. Generally, these requirements are far more stringent than they are for the storage of non-archival Federal records.

5. The age and deteriorating condition of the Seattle NARA facility is a significant concern. A facility Condition Survey conducted by GSA in 2017 identified a wide-range of deficiencies that included life-safety issues and critical concerns with seismic performance. Specifically, the assessment identified the following issues: the original wooden roof requires replacement; the fire alarm and sprinkler systems need upgrades; the heating, plumbing, and electrical systems must be replaced; and the facility needs seismic upgrades to prevent partial or total collapse in the event of a major seismic event. Given these serious structural issues, NARA and GSA have concluded that the Seattle facility cannot continue to meet NARA's storage standards and requirements without a significant investment. However, because of the high cost of all of the available options, and the unavailability of funding for such an endeavor in the foreseeable future, NARA has concluded that the best option available to it in the near-term is to relocate the archival records to other NARA facilities in the United States where they can be stored in accordance with the applicable NARA standards.

6. FASTA was enacted into Federal law in 2016. The statute was envisioned by Congress as a deficit reduction measure achieved in part by "selling or redeveloping high value assets that are underutilized to obtain the highest and best value for the taxpayer and maximize the return to the taxpayer." FASTA § 2(4).

7. In 2018, GSA awarded a contract to a private real estate firm, Coldwell Banker Richard Ellis (CBRE). CBRE was tasked under this contract to provide independent third-party analysis of the federal real property inventory across the entire Federal Government using its knowledge of relevant real estate markets to identify high value disposal candidates in order to assist

DEFENDANTS PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON MOTION FOR
PRELIMINARY INJUNCTION - 3
(Case No. C21-0002-JCC)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

the incoming PBRB in meeting its responsibilities under FASTA. The Seattle NARA facility was identified by CBRE as a high value asset candidate in its report fulfilling this assigned task, and the CBRE report was given directly to the PBRB by GSA. The referral of the Seattle NARA facility was made directly to the PBRB and was not made by GSA to OMB pursuant to its obligation to identify candidate properties to OMB under Section 11(a) of FASTA.

8. In a letter dated October 31, 2019, the PBRB included the Seattle NARA facility amongst a list of fourteen "high value" federal civilian properties that PBRB recommended to the OMB for disposal pursuant to FASTA. On December 27, 2019, the PBRB submitted a High Value Assets Report to OMB, containing additional information about the 12 properties that were ultimately recommended for disposition, including the Seattle NARA facility.

9. On January 24, 2020, OMB approved the PBRB recommendations.

10. In a letter dated February 5, 2020, addressed to the former OMB Director and the members of the PBRB, the Attorney General of Washington requested that the decision to sell the Seattle NARA facility be "reconsidered." A series of communications ensued between the Attorney General's Office and the United States Attorney's Office through April 21, 2020. Thereafter, and without notice or explanation, the Washington Attorney General ceased communications with the Federal government concerning the dispute.

11. On January 4, 2021, plaintiffs, including the State of Washington, filed a 188-paragraph complaint. Three days later, plaintiffs filed their preliminary injunction motion along with 169 pages of exhibits and 586 pages of declarations. Defendants were given 18 days to respond.

12. To the extent that any of the following Conclusions of Law are deemed to be findings of fact, they are hereby incorporated into this statement of Findings of Fact.

///
///
///
///

DEFENDANTS PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON MOTION FOR
PRELIMINARY INJUNCTION - 4
(Case No. C21-0002-JCC)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

**CONCLUSIONS OF LAW**

1. Plaintiffs seek a preliminary injunction enjoining defendants from selling the Seattle NARA facility and from taking any actions to facilitate or effectuate a sale of the Seattle NARA facility until a final determination on the merits is issued by this Court. To obtain a preliminary injunction, it is incumbent upon the moving party to show that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008) (citations omitted).

2. This Court had general subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. However, because the defendants in this action are all agencies of the Federal government and officers thereof sued in their official capacities, plaintiffs' claims must all be supported by a statutory waiver of sovereign immunity. *See Hodge v. Dalton*, 107 F.3d 705, 707 (9th Cir. 1997).

3. Plaintiffs' claims are all based on the judicial review provisions of the Administrative Procedure Act (APA), 5 U.S.C. §§ 701-706. They contend that the decision to sell the Seattle NARA facility pursuant to the provisions of FASTA was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

4. An analysis of the parties' arguments on the merits necessitates a detailed understanding of the statutory purposes and operation of the statute. In general, the purpose of FASTA is:

> to reduce the costs of Federal real estate by –
> (1) consolidating the footprint of Federal buildings and facilities;
> (2) maximizing the utilization rate of Federal buildings and facilities;
> (3) reducing the reliance on leased space;
> (4) selling or redeveloping high value assets that are underutilized to obtain the highest and best value for the taxpayer and maximize the return to the taxpayer;
> (5) reducing the operating and maintenance costs of Federal civilian real

DEFENDANTS PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON MOTION FOR
PRELIMINARY INJUNCTION - 5
(Case No. C21-0002-JCC)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

properties;

(6) reducing redundancy, overlap, and costs associated with field offices;

(7) creating incentives for Federal agencies to achieve greater efficiency in their inventories of civilian real property;

(8) facilitating and expediting the sale or disposal of unneeded Federal civilian real properties;

(9) improving the efficiency of real property transfers for the provision of services to the homeless; and

(10) assisting Federal agencies in achieving the Government's sustainability goals by reducing excess space, inventory, and energy consumption, as well as by leveraging new technologies.

FASTA § 2.

5. Although the statute applies generally to Federal civilian real property, certain categories are excluded by the statute. FASTA § 3(5)(B). Among these are:

Properties used in connection with Federal programs for agricultural, recreational, or conservation purposes, including research in connection with the programs.

FASTA § 3(5)(B)(viii).

6. The other important sections of the statute for purposes of resolving this motion are as follows:

(*i*) Section 11:

Under FASTA § 11, the head of each federal agency is required to annually submit to GSA and OMB specific information about Federal properties under their control and identify properties that may be considered for sale or other disposition. FASTA § 11(a). Under the process established by § 11, OMB and GSA are required to develop "consistent standards and criteria" for the evaluation of the Federal agency recommendations made pursuant to Section 11(a), incorporating enumerated statutory factors, and apply those standards and criteria in order to jointly develop recommendations on the Federal agency submissions for consideration by the PBRB. FASTA § 11(b) and (c). OMB

DEFENDANTS PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON MOTION FOR
PRELIMINARY INJUNCTION - 6
(Case No. C21-0002-JCC)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

is then expected to submit its standards, criteria, and recommendations, together with all supporting information to the PBRB.  FASTA § 11(d).

(*ii*)  Section 12:

Under FASTA § 12, the PBRB is required to "identify opportunities for the Government to reduce significantly its inventory of civilian real property and reduce costs."  FASTA § 12(a).  To that end, the PBRB, in the High Value Asset round of the process, was required to identify not fewer than five Federal civilian properties with a total fair market value of not less than $500 million and not more than $750 million and to transmit that list to OMB and Congress as PBRB recommendations for approval by OMB under FASTA § 13.  FASTA §§ 12(b)(1)(A) and (B).

FASTA does not require the PBRB to draw its recommendations from the list of properties identified by Federal agencies in the Section 11 process, nor does FASTA require that the PBRB follow, or even consider, OMB/GSA Section 11 recommendations based on those Federal agency submissions.  Instead, the statute provides:

> The Board shall perform an independent analysis of the inventory of Federal civilian real property and the recommendations submitted pursuant to section 11.  *The Board shall not be bound or limited by the recommendations submitted pursuant to section 11.*

FASTA § 12(c) (emphasis added).  Moreover, FASTA authorizes the PBRB to base its recommendations on other sources of information.  FASTA § 12(d)(1) provides that, "[n]otwithstanding any other provision of law, the [PBRB] may receive and consider proposals, information, and other data submitted by State and local officials and the private sector."  After developing its recommendations, the PBRB is directed to transmit those recommendations to OMB for approval.  FASTA § 12(g).

(*iii*)  Section 13:

Following its receipt of the PBRB recommendations, OMB is required to conduct a review and, within 30 days, either approve or disapprove the PBRB recommendations.  FASTA § 13(a).

(*iv*)  Section 18:

FASTA expressly precludes judicial review of any action taken under sections 12 and 13 of FASTA.  FASTA § 18(1).  Moreover, FASTA precludes judicial review of actions taken by the

DEFENDANTS PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON MOTION FOR
PRELIMINARY INJUNCTION - 7
(Case No. C21-0002-JCC)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206)-553-7970

PBRB.  FASTA § 18(2).

7. For the reasons set forth below, the Court concludes that plaintiffs have failed to carry their burden of demonstrating that they are likely to succeed on the merits.

8. Plaintiffs are required to establish both that they have standing to bring each of their claims under Article III of the United States Constitution, and that they have statutory standing for those claims.

9. Article III standing requires plaintiffs to establish that they have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *See Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S.Ct. 1540, 1547, 194 L.Ed.2d 635 (2016).  Plaintiffs have not shown that their claimed injury is "fairly traceable" to the wrongful conduct that is the gravamen of Counts II and III of their amended complaint.  In Counts II and III, plaintiffs allege that they have been injured in the form of future denied access to original archival records presently stored in the Seattle NARA facility by the failure of OMB and GSA to promulgate standards and criteria and to make recommendations to the PBRB on candidate properties identified by Federal agencies pursuant to FASTA § 11.  The chain of injury and causation relied upon by plaintiffs depends on the identification of the Seattle NARA facility in the Section 11 process, and the passing through of the Seattle NARA facility to the PBRB without the benefit of the recommendation of OMB and GSA based upon the "standards and criteria" that they were required to jointly develop pursuant to FASTA §§ 11(b) and (d).  However, as defendants have pointed out, FASTA does not require the PBRB to rely on recommendations submitted to it by OMB and GSA under FASTA § 11, and the statute permits the PBRB to rely on information obtained from outside sources and to make its own independent judgments.  FASTA §§ 12(c) and (d)(1).  The evidence submitted by defendants establishes that the Seattle NARA facility came to the attention of the PBRB not through the Section 11 process, but from a private real estate firm, CBRE.  Thus, based on this evidence, it does not appear that plaintiffs' alleged injuries under Counts II and III are "fairly traceable" to the alleged misconduct of OMB and GSA under FASTA § 11.

DEFENDANTS PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON MOTION FOR
PRELIMINARY INJUNCTION - 8
(Case No. C21-0002-JCC)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

10.     Constitutional standing aside, plaintiffs must also demonstrate that they have statutory standing for Counts I, II and III.  (Plaintiffs have indicated that they are not moving for relief on the basis of Count IV of the amended complaint, which alleges a failure by the agencies to consult with Indian Tribes before deciding to sell the Seattle NARA facility.)  Because plaintiffs' claims rest upon the APA, plaintiffs must establish that their claims are within the "zone of interests" of FASTA.  This test imposes the requirement, beyond constitutional standing requirements, that a plaintiff assert an interest "arguably within the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Nevada Land Action Association v. United States Forest Service*, 8 F.3d 713, 715-716 (9th Cir. 1993).  The Court concludes that plaintiffs' claims are not within the zone of interests of FASTA.  The purpose of FASTA, as set forth in FASTA § 2, is to reduce the costs to the Federal government of its extensive real estate holdings by creating an internal government process designed to facilitate the identification of high value assets and underutilized real estate and to expedite the disposition of those properties by sale or otherwise.  Plaintiffs' claims stand at odds with the purposes of FASTA.  Plaintiffs seek to use the statute to stop or delay a sale of a Federal property identified as a high value asset and they seek to do so for reasons that the statute was not intended to promote, *i.e.,* their convenient access to archival records in Seattle.  Plaintiffs have failed to establish that they have statutory standing to bring their claims.

11.     Moreover, the judicial review sought by plaintiffs' claims is expressly precluded by the statute.  The APA affords the Court jurisdiction to review only "final agency actions."  *See Rattlesnake Coal. v. U.S. E.P.A.*, 509 F.3d 1095, 1104 (9th Cir. 2007).  The evidence before the Court shows that the PBRB recommended to OMB pursuant to FASTA § 12 that the Seattle NARA facility be sold, and that OMB approved the PBRB's recommendation pursuant to FASTA § 13.  A "recommendation" of the PBRB is not a "final agency action" that is reviewable under the APA.  *Ecology Ctr., Inc. v. U.S. Forest Serv.*, 192 F.3d 922, 925 (9th Cir. 1999).  Thus, the only "final agency action" potentially reviewable by the Court under the APA is OMB's approval, pursuant to FASTA § 13, of the PBRB recommendation to sell the Seattle NARA facility.  However, FASTA § 18(1) expressly precludes judicial review of actions taken under FASTA §§ 12 and 13.  Where, as

DEFENDANTS PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON MOTION FOR
PRELIMINARY INJUNCTION - 9
(Case No. C21-0002-JCC)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

here, a statute expressly precludes judicial review, the APA does not provide the necessary waiver of sovereign immunity for a claim against Federal agencies and officials. 5 U.S.C § 701(a)(1).

12. As to Count I of plaintiffs' complaint, the Court does not agree with plaintiffs' argument that the Seattle NARA facility is an excluded property under FASTA § 3(5)(B)(viii). Plaintiffs' reading of the statute gives the term "conservation" an excessively broad definition that is inconsistent with the surrounding terms, "agricultural" and "recreational" in the statute. *See Gutierrez v. Ada*, 528 U.S. 250, 255, (2000). Moreover, the PBRB apparently interpreted the exemption differently from plaintiffs in deciding to recommend the Seattle NARA facility to OMB for sale. Plaintiffs' claim amounts to an attempted circumvention of the FASTA § 18(2) preclusion of judicial review of PBRB's actions.

13. The Court also concludes that a weighing of the equities does not favor granting plaintiffs' motion. Plaintiffs delayed for over eight months in bringing this action. And, given defendants' representation that they will not sell the facility before July 1, 2021, plaintiffs have failed to show that this lawsuit, which has been brought under the APA and therefore will necessarily be determined on the basis of an administrative record and summary judgment motions, cannot be fully briefed, argued and decided before plaintiffs will suffer any harm in the form of a denial of access to the Seattle NARA facility. This weighs heavily against granting plaintiffs the relief they seek *pendente lite*. *See Matos ex rel. Matos v. Clinton Sch. Dist.*, 367 F.3d 68, 74 (1st Cir. 2004).

14. Finally, plaintiffs' claimed public interest in maintaining convenient access to the archival records in Seattle is not the paramount public interest at stake. The more important public interest at stake is the permanent preservation of the historical records stored at the Seattle NARA facility for future generations. Defendants have submitted substantial evidence about the present inadequacy of the Seattle NARA facility for that purpose, the prohibitive cost of any acceptable solution that would allow the records to remain in Seattle, and the unavailability of a source of funding to solve those problems for the foreseeable future. NARA has concluded that its best near-term option for the permanent safeguarding of these precious records for future generations is to

DEFENDANTS PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON MOTION FOR
PRELIMINARY INJUNCTION - 10
(Case No. C21-0002-JCC)

UNITED STATES ATTORNEY
5220 UNITED STATES COURTHOUSE
700 Stewart Street
Seattle, Washington 98101-1271
(206) 553-7970

remove them to another NARA facility in the United States that can provide them with the necessary level of protection. As defendants point out, that move is inevitable, and the sale of the facility pursuant to FASTA promises to hasten the day when the archival records can be removed to a more protective location. Plaintiffs' effort in this lawsuit effort to block the sale of the Seattle NARA facility threatens delay. Thus, the public interest weighs in favor of denying plaintiffs' motion.

15. For the reasons set forth above, plaintiffs' motion for a preliminary injunction is denied. The Court concludes that plaintiffs have not demonstrated that they are likely to prevail on the merits, and plaintiffs have not shown that they will suffer any irreparable harm before their claims can be heard on the merits. Thus, in balancing the equities, the Court concludes that the equities as well as the public interest weigh in favor of a denial of the motion.

16. To the extent that any of the foregoing Findings of Fact are deemed to be conclusions of law, they are incorporated into these Conclusions of Law.

DATED this _____ day of February 2021

_____
JOHN C. COUGHENOUR
Senior United States District Judge

Presented by:

*/s/ Brian C. Kipnis*
BRIAN C. KIPNIS
Assistant United States Attorney

DEFENDANTS PROPOSED FINDINGS OF FACT AND
CONCLUSIONS OF LAW ON MOTION FOR
PRELIMINARY INJUNCTION - 11
(Case No. C21-0002-JCC)